### A. KATZ V. THE STATE.

No. 15257. Delivered October 19, 1932.
State's Rehearing Denied November 23, 1932.
Reported in 54 S. W. (2d) 130.

The opinion states the case.

*Newton & Gittinger* and *Leonard Brown,* all of San Antonio, for appellant.

*D. F. Davis,* County Attorney, *Marion R. McClanahan* and *Arthur V. Wright,* Asst. Co. Attys., all of San Antonio, *James V. Allred,* Atty. Gen., *Neal Powers,* Asst. Atty Gen., and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is pursuing the business of lending money and charging and receiving therefor a fee and brokerage, without paying the occupation tax provided for in Chapter 41, General and Special Laws. of the Forty-second Legislature, enacted during the Second Called Session; the punishment, a fine of $150.

Appellant attacks the caption of the act, insisting that it is violative of section 35, article 3, of the Constitution. The applicable portion of the cited section of the Constitution reads: "No bill * * * shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

The title to the bill reads as follows: "An Act to amend Section 14, Article 7047, of the Revised Civil Statutes of 1925, relating to and imposing an occupation tax on money lenders and defining same and providing for certain exceptions, and declaring an emergency."

The provision of the bill here in question reads:

"SECTION 1. That Article 7047, Section 14, of the Revised Civil Statutes of Texas of 1925 be and the same is hereby amended to read as follows:

"SECTION 14. *Money lenders.*—Money lenders as hereafter defined, an annual tax of One Hundred and Fifty Dollars ($150.00) for each place of business. A money lender, for the purpose of this section, is a person, firm or corporation, or agent or agents for, or anyone representing a person, or persons, firm or corporation, who regularly pursues the business of lending money with or without security, and charges or receives therefor a fee, brokerage or other charge of any kind whatsoever, provided, this tax shall not apply to persons, firms, associations or corporations who lend money on or incident to

real estate nor shall this tax apply to banks or banking institutions and life insurance companies regularly organized as such."

A solution of the question makes it necessary to examine article 7047, Revised Civil Statutes of 1925, which embraces the section sought to be amended. After providing for the collection of an occupation tax, article 7047 sets forth thirty-nine numbered subdivisions, each of which relates to a distinct occupation. Subdivision 14 reads as follows: *"Loan brokers.—* From loan brokers, as that term is defined ·by the laws of this State, an annual tax of One Hundred and Fifty Dollars for each place of business."

We find "loan brokers" defined in article 6162, Revised Civil Statutes of 1925, which we quote:

"A 'loan broker' is a person, firm or corporation who pursues the business of lending money and taking as security for the payment of such loan and interest an assignment of wages, or an assignment of wages with power of attorney to collect the same, or other order for unpaid chattel mortgage or bill of sale upon household or kitchen furniture."

Subdivision 15 of article 7047 defines "money lenders" and provides for the payment of an occupation tax. We quote: *"Money lenders.—*From every person, firm or association of persons loaning money as agent or agents for any corporation, firm or association, either in this State or out of it, an annual occupation tax of one hundred and fifty dollars for the State, for the principal office, and a county tax of fifteen dollars from each agent for each county in which he may do business, and no additional occupation tax shall be levied by any county, city or town in this State."

Deducing from the judicial precedents the principles controlling, it is observed that a liberal construction will be applied in determining whether or not a statute violates section 35, of article 3 of the Constitution, and, where the provisions are germane in any degree, the law will be upheld. Mercer v. State, 111 Texas Crim. Rep., 657, 13 S. W. (2d) 689; Davis v. State, 88 Texas Crim. Rep., 183, 225 S. W., 532. The word "subject" in the constitutional provision to which reference has been made is used in the same sense as the word "object" in former Constitutions. Mercer v. State, supra; Fielder v. State, 40 Texas Crim. Rep., 184, 49 S. W., 376. The word "object" under former Constitutions was construed by the courts to mean "end or purpose." Giddings v. San Antonio, 47 Texas, 548, 26 Am. Rep., 321; Breen v. Ry. Co., 44 Texas, 302; Stone

v. Brown, 54 Texas, 331; State v. McCracken, 42 Texas, 384; Houston & T. C. R. Co. v. Odum, 53 Texas, 344; International and G. N. R. Co. v. Smith County, 54 Texas, 1.

The purpose of the constitutional provision under consideration is well expressed in the case of Consolidated Underwriters v. Kirby Lumber Company (Texas Com. App.), 267 S. W., 703, from which the following is taken: "It is well recognized that the purposes of this provision are to advise the Legislature and the people of the nature of each particular bill, so as to prevent the insertion of obnoxious clauses which otherwise might be ingrafted on it and become the law, and to obviate legislation through the combination, upon a composite bill, of the votes of the proponents of different measures included in it, some of which would not pass upon their merits if separately considered."

See, also, Stone v. Brown, 54 Texas, 342.

The judicial precedents are to the effect that, if the general and ultimate subject of the particular act as a whole is to be found within the wording of the title, the subject thus expressed will support provisions in the body of the act that are components of the general subject; are reasonably implied by it because they have been connected with, and appropriate to, it in similar laws or by usage; are relevant and germane to it; are necessary for the attainment of it; are reasonably auxiliary to it; are complementary to it; or are reasonable incidents of it, or of its incidents as expressed in the title. Consolidated Underwriters v. Kirby Lumber Company, supra, and authorities therein cited. On the other hand, it is the announcement of the decisions that particular provisions are not within a given title where no subject at all is expressed in the title; where the ultimate subject expressed and that provided for are plainly different; where the provisions are palpably ulterior or foreign to the title; where they are separate, distinct from, and not germane to the subject expressed; where by no intendment they possess a necessary or proper connection with it; where they are disconnected from it and inappropriate to it. Consolidated Underwriters v. Kirby Lumber Company, supra, and authorities therein cited.

It has already been observed that the act (chapter 41) under consideration purports to amend section 14 of article 7047, Revised Civil Statutes of 1925. In stating the principles from which it may be determined whether the title to a bill meets the requirement of section 35, article 3, of the Constitution, we are not to be understood as holding that the title of an act

amendatory of an article in a code, such as our Revised Statutes, is insufficient if it does no more than refer to the code and the number of the article therein. The courts of this state have held that a reference to a number of an article in a code, such as our Revised Statutes, is sufficient in the title of an act amendatory thereof, to allow any amendment germane to the subject treated in the article referred to. English and Scottish American Mortg. & Inv. Co. v. Hardy, 93 Texas, 289, 55 S. W., 169; State v. McCracken, 42 Texas, 384. The reason for the holding appears to be that the naming of the article to be amended directs attention to all of the provisions therein, as the subject of the amending act, and that such provisions can be ascertained by reading the article to be amended. However, when the Legisature restricts the title of an amendatory act by reference to the number in the code of the article amended, and announces its purpose to deal with the original bill in respect to particular matters therein, it is bound to govern itself accordingly, and keep within what it had itself declared would be the limits of its proposed action. Sutherland Statutory Construction (2d Ed.), vol. 1, sec. 139; State v. American Sugar Refining Co., 106 La., 553, 31 So., 181, 186.

We quote from Sutherland Statutory Construction, supra, as follows: "Where the title of the amendatory act specifies the section or sections to be amended, the weight of authority is that the amendments must be germane to the subject matter of the sections specified, and that amendments of other sections, not specified, will be void. * * * Where the section is specified, matter can be introduced by way of amendment in such section which is provided for elsewhere in the act."

Many authorities are cited in support of the text, among the citations being State v. American Sugar Refining Co., supra. In the case last mentioned, the court considered an act to amend sections 10, 12 and 14 of an act in relation to licensing occupations. The act brought into these sections the business of refining sugar and molasses. The business last mentioned was provided for in section 11 of the original act. This was held to be void as not within the title. We quote from the opinion of the court as follows: "When this act was passed, the general public and each person pursuing any of the businesses mentioned therein were advised of the exact situation, and placed in position to take steps to thereafter maintain, alter, or repeal the act as the different interests might be affected. The general public and each individual concerned was called upon to watch subsequent legislation concerning licenses.

If the title of a proposed law should give notice of an intention to amend or repeal generally the preceding act, every interest involved should be placed upon the alert, and warned of a possible injurious change in the law. If, however, the title of the proposed law should give notice of an intention to simply amend a particular section of the bill, then all parties other than those interested in the subject-matter contained in that particular section would be thrown off their guard, and, being led to believe they had no interest in the new statute, would take no steps looking to their own protection. If, under the title of a bill to amend simply 'section one' of a given law, which section affects only specified persons, or deals with a particular subject, distinct matters which are contained in and specially provided for in another section, and which concerned a different set of persons, could, after being dealt with differently from what they were in their proper section, be transported over and inserted into 'section one' as so altered, the parties concerned in this change might be greatly deceived and ruined without their knowledge."

Numerous judicial precedents are cited in support of the holding in State v. American Sugar Refining Co., supra, among them being Ex parte Cowert, 92 Ala., 94, 9 So., 227; Ex parte Hewlett, 22 Nev., 333, 40 Pac., 96; Trumble v. Trumble, 37 Neb., 340, 55 N. W., 869, 870; State v. Bankers' & Merchants' Mut. Ben. Assn., 23 Kan., 502; Chiles v. Monroe, 4 Metc. (Ky.), 72; Board of Com'rs. of Pitkin Co. v. Aspen Mining & Smelting Co., 3 Colo. App., 223, 32 Pac., 717, 718; People ex rel v. Fleming, 7 Colo., 230, 3 Pac., 70; Miller v. Hurford, 11 Neb., 377, 9 N. W., 477; State v. Cornell, 54 Neb., 72, 74 N. W., 432, 434; State v. Tibbets, 52 Neb., 228, 71 N. W., 990, 66 Am. St. Rep., 492; State v. Southern Ry. Co., 115 Ala., 250, 22 So., 589-591; Armstrong v. Mayer, 60 Neb., 423, 83 N. W., 401; State v. Ferguson, 104 La., 249, 28 So., 917, 918, 81 Am. St. Rep., 123.

The following is taken from Dolese v. Pierce, 124 Ill., 140, 16 N. E., 218, as quoted in State v. American Sugar Refining Co., supra: "An act to amend certain sections of a general law is limited in its scope to the subject-matter of the sections proposed to be amended. In such case the introduction of any new substantive matter not germane or pertinent to that contained in the original sections cannot be regarded as an amendment thereto, but must be regarded as independent legislation upon a matter not expressed in the title of an act, and therefore void. The amendment of an act in general or the particular

section * * * implies merely a change of its provisions upon the same subject to which the act or section relates."

The foregoing principle is found announced in numerous decisions of the supreme courts of other states having constitutional provisions similar to our own. See State v. American Sugar Refining Company, supra, and authorities cited. It is in harmony with the general principle announced in our own decisions. Consolidated Underwriters v. Kirby Lumber Company; English and Scottish American Mortg. & Inv. Co. v. Hardy, supra. As we have already stated, the reason for the holding by our courts that a reference to a number of an article in a code, such as our Revised Civil Statutes, is sufficient in the title of an act amendatory thereof to allow any amendment germane to the subject treated in the article referred to, appears to be that the naming of the article to be amended directs attention to all of the provisions therein, as the subject of the amending act, and that such provisions can be ascertained by reading the act to be amended. Thus, in the present case the provisions of the section sought to be amended were, in effect, directed attention to in the title of the act as the subject of the amending act.

If, in giving application to the principles controlling it appears that there was introduced in the amendatory act new substantive matter, not germane or pertinent to that contained in section 14 of article 7047, Revised Civil Statutes of 1925, the amendatory act must be held to be independent legislation upon a matter not expressed in the title of the act, and, therefore, void. Looking to the title of the amendatory act, it is seen that it is stated therein that such act amends section 14 of article 7047, Revised Civil Statutes of 1925. Examining the body of the act, it is found that it is expressly stated therein that section 14 is amended. There is nothing in the act expressly repealing section 15. Section 14 of the original act sought to be amended relates to an occupation tax on loan brokers, who are defined in article 6162, Revised Civil Statutes of 1925. Subdivision 15 of article 7047 provides for an occupation tax on money lenders, who are defined in such subdivision. Thus it is seen that loan brokers and money lenders were, in article 7047, separately classified as distinct occupations. Article 6162, supra, was not attempted in the amendatory act to be amended. In referring to section 14 the Legislature made that section the subject of the amending act. It is clear, we think, that the matter treated in the body of the amending act is not germane to the subject treated in section

14 of article 7047. It might be that the Legislature really wished to amend section 15 relating to money lenders, but as the title stated that it is an act to amend section 14, and the body of the act repeats that statement, the opinion is expressed that it must be taken just as it reads. Ex parte Hewett, 22 Nev., 334, 40 Pac., 96; State v. American Sugar Refining Company, supra.

Giving application to the principles controlling, we are constrained to hold that the introduction of new substantive matter in the amendatory act not germane or pertinent to that contained in the original section 14 characterizes the amendatory act independent legislation upon a matter not expressed in the title of the act, and that the act is, therefore, void.

The judgment is reversed and the prosecution ordered dismissed.

*Reversed and prosecution ordered dismissed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In a motion for rehearing by the state we understand no serious question is raised regarding the disposition of the case upon the grounds stated in our original opinion, but the state suggests that, in view of probable future legislation on that subject, an expression of the opinion of this court on other phases of the case might be desirable. If there should be other legislation upon the subject involved, it is impossible for this court to know in what form it might appear. The propriety of expressing an opinion upon matters not necessary to the disposition of a case is open to serious criticism, as being dicta only, and of little, if any, weight. For the reasons stated we refrain from responding to the state's suggestion.

The motion for rehearing is overruled.

*Overruled.*