BOARD OF WATER ENGINEERS OF THE STATE OF TEXAS
v. CITY OF SAN ANTONIO

No. A-5083. Decided October 26, 1955.
Rehearing overruled November 23, 1955.
(283 S.W. 2d Series 722)

*John Ben Shepperd,* Attorney General, *Burnell Waldrep* and *Johns Reeves,* Assistant Attorney Generals, for petitioner.

The Court of Civil Appeals erred in holding that a justiciable controversy was presented, and that the provisions of section 1a of Article 1434a are in violation of Article III, section 35, of the Constitution of Texas. Cowan v. Cowan, 254 S.W. 742, error refused; Cobb v. Harrington, 144 Texas 360, 190 S.W. 2d 709; Praetorians v. State, 184 S.W. 2d 300; Gulf Ins. Co. v. James, 143 Texas 424, 185 S.W. 2d 966.

*Boyle, Wheeler, Gresham, Davis & Gregory* and *J. D. Wheeler,* all of San Antonio, for respondent.

In reply to petitioner's contentions cited Arnold v. Leonard, 114 Texas 535, 273 S.W. 2d 799; Hamilton v. St. Louis, S. F. & T. Ry. Co., 115 Texas 455, 283 S.W. 475; Rodriguez v. Gonzales, 148 Texas 537, 227 S.W. 2d 791.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

This so far successful suit by the respondent, City of San Antonio, against our petitioner, Board of Water Engineers of the State of Texas, presents questions as to (a) existence *vel non* of a justiciable controversy within our Uniform Declaratory Judgments Act of 1943 (Art. 2524-1, Vernon's Tex. Civ. Stats. Ann.) and (b) validity of a given statutory amendment (Sec. 1-a of Art. 1434a, Vernon's Tex. Civ. Stats. Ann.) as against our constitutional restrictions concerning subjects and captions of legislative acts (Art. III, Sec. 35) and local or special laws (Art. III, Sec. 56), Vernon's Ann. State Constitution.

The source of the controversy is the proposed construction by the Guadalupe River Authority of the so-called Canyon Dam in Comal County, a flood control project to be financed in whole or part by the United States. Evidently the corresponding federal laws and regulations permit of municipalities such as the respondent City participating in the project in order to augment their own water supply by building the dam higher than it would otherwise be and furnishing the necessary funds for this purpose. This participation, however, is in effect conditioned upon permission from the petitioner Board for the taking of the additional impounded waters in question.

The respondent City, one of the three largest in Texas, is faced with a serious water-supply problem by reason of a large and rapid increase in population and water consumption within and around its corporate limits, coupled with a serious fall in its potential underground water supply. While the City is located outside of the natural watershed of the Guadalupe River and could make use of the Canyon Dam waters only by means of an expensive pipe line, it has become interested in the dam project, as other cities of the state have done in other and comparable situations, to the point of making detailed studies and attempting to secure priorities for a portion of the excess waters it might make or help to make available if it should participate in the enterprise.

In the latter connection, Art. 7496, Vernon's Tex. Civ. Stats. Ann., provides, generally speaking, for an application or "presentation" to the Board by "any person who desires to investigate the feasibility of any water appropriation or use of water" in certain large quantities, upon approval and filing of which by the Board, the study may be made and a priority for the corresponding work and water appropriation established as of the filing date, subject to specified conditions as to beginning and completion of the work. The respondent City made such a presentation, but the Board refused to approve or file it, stating in effect that it would have approved and filed it as a proper and meritorious application under the statute, but for the single fact of the City being located beyond the natural watershed of the river and thus prohibited from diverting the waters by the express terms of Sec. 1-a of Art. 1434a, supra.[1]

The respondent City thereupon instituted this suit for de-

---

1. "Sec. 1a. It shall be unlawful for any person, firm, association, or corporation to withdraw any water from the Guadalupe River or Comal River or any tributaries of such rivers or springs emptying into such rivers, or either of them,

claratory judgment that Sec. 1-a is unconstitutional. Its pleadings did not specifically allege arbitrariness upon the part of the Board nor specifically pray for ancillary relief such as mandatory injunction or mandamus. They did clearly allege the above-mentioned facts concerning the attempted filing of the respondent's presentation, including the Board's exclusive reliance on Sec. 1-a for its refusal to approve and file. Parts of the relief prayed were (1) a determination "that the plaintiff has the legal right to have the presentation - - accepted and filed - - with priority" and (2) "other relief, general and special."

The trial court rendered the declaratory judgment as prayed. Following this the petitioner Board, pending its appeal, proceeded to file the respondent's presentation but with the express reservation that such filing was conditioned upon affirmance of the trial court judgment. The Austin Court of Civil Appeals has affirmed it. 273 S.W. 2d 913.

No point appears to be made that the case is moot or otherwise nonjusticiable merely by reason of the actual filing of the application, and we think the conditional character of the Board's approval would have rendered such a view untenable had it been urged. But lack of a justiciable controversy is argued, as we understand the briefs, on the theory that the respondent's failure to allege an abuse of discretion or arbitrariness concedes a discretion of the Board to treat Art. 1434a, Sec. 1-a, supra, as valid in the absence of a contrary adjudication, and therefore also the discretion to refuse approval and filing of the respondent's application. This alleged concession is said to make the suit one for a mere "advisory opinion" as to the constitutionality of the statute in question. We do not so regard it.

■ The expressions "advisory opinion" and "justiciable controversy" as here used refer to the requirements, which undoubtedly exist as prerequisite to the declaratory judgment process, that (a) there shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought. See Hodges, General Survey of the Uniform Dec-

---

for the purpose of transporting such water to any point or points located outside of the natural watersheds of such rivers.

"Any such withdrawal or attempted withdrawal of water from said rivers, springs, and/or tributaries may be enjoined in a suit for injunction brought by any person, municipality, or corporation owning riparian rights in or along said rivers. The venue of such suits shall be in the District Court of the county where such withdrawal or attempted withdrawal occurred."

laratory Judgment Act in Texas, Vol. 8, Vernon's Tex. Civ. Stats. Ann., p. XI (1951) ; also Sec. 6, Art. 2524-1, supra; Cobb v. Harrington, 144 Texas 360, 190 S.W. 2d 709, 172 A.L.R. 837; Railroad Commission v. Houston Natural Gas Corp., (Tex. Civ. App., cited in Cobb v. Harrington) 186 S.W. 2d 117; Garwood Irr. Co. v. Lundquist (Tex. Civ. App.), 252 S.W. 2d 759; wr. of er. refused; McDonald, Texas Civil Practice, Vol. 1, Sec. 2.01.

■ But to admit the legal fact, if it is a fact, that the petitioner Board may properly await the judgment of a court before ignoring the prohibition of Sec. 1-a, supra, is not to admit that there is no dispute over whether the Board has the ultimate duty to cease refusing to approve and file the respondent's application and whether the respondent has the present right, which it expressly pleaded and prayed to have declared, that such approval be given and filing accepted. If it were otherwise, there would rarely be a proper case for declaratory judgment concerning the validity of a statute, because there will be very few statutes which are not *presumptively* valid. That Sec. 1-a is presumptively valid is all that the respondent has admitted, if admitting anything. The controversy is as to whether it is *actually* valid. Clearly this is a real and practical controversy, because the respondent insists on its application being approved and filed despite the statute, on which the Board relies, and asserts valuable rights of a property nature to be effective or ineffective depending upon such approval and filing. Clearly, too, the judicial declaration in suit will determine the controversy, because the Board will approve and file the City's application if the statute is declared invalid and will properly continue to refuse to do so if it is declared valid.

Nor is there merit to the apparently further contention that a justiciable controversy is absent because of the failure of the respondent to pray specifically for other than declaratory relief. Even assuming the actual prayer for "other relief, general and special" to be without significance, the argument is yet in the very teeth of Secs. 1 and 8 of Art. 2524-1, supra, and, indeed, of the main purpose of declaratory judgments, which is to permit of settling actual controversies by appropriate judicial declaration, without necessarily invoking "traditional relief," such as injunction or other writs, damages and the like. Indeed, it has been observed that some of the "traditional remedies," such as decrees removing a cloud or cancelling an instrument, are themselves but declaratory judgments, despite that their names may suggest otherwise. See Hodges, supra, p. VII.

The lack of a prayer for traditional types of relief does not of itself even suggest absence of the essential requirements of a real controversy, determinable by the suit.

The real issue in the case is whether Sec. 1-a, supra[1] is void because of Art. III, Sec. 35 of our State Constitution, stating that:

"No bill - - - shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed."

Well prior to the existence of Sec. 1-a, the bulk of the present Art. 1434a was enacted as Senate Bill No. 103, Chapter 76, p. 202, Acts of the First Called Session, 43rd Legislature (1933). The object of the Act, expressed in its first section, was to provide for the formation of corporations by three or more citizens of the State "for the purpose of furnishing a water supply to towns, cities, and private corporations and individuals." Sec. 1 of the Act also detailed sundry provisions concerning dividends, sinking fund for replacements and the like as properly includible in the charter. Sec. 2 of the Act authorized such corporations as might be organized under the Act to contract with all federal agencies, borrow money, issue bonds and do other such things for the promotion of their corporate purposes. The remaining six sections provided for additional specific powers and duties of such corporations, more or less in elaboration of Sections 1 and 2. In no part of the Act does a word such as "river," "stream," "watercourse," "watershed," "dam" or "lake" occur.

Sec. 1-a was enacted in 1941 as part, although a large part, of a purported amendment to Sections 1 and 2 of the 1933 Act above mentioned by House Bill 953, Chap. 407, Acts 47th Legislature, Regular Session. The caption of the Amendatory Act read:

"An Act amending Sections 1 and 2 of Chapter 76, Senate Bill No. 103, page 202, General and Special Laws, passed at the First Called Session of the Forty-third Legislature; and declaring an emergency."

The body of the Act declared Sec. 1 of the earlier Act to be "amended so as to read as follows." Then followed "Section 1," in terms identical with the original Sec. 1 except for the in-

---

[1]See note one on page 113.

sertion of a few words giving these corporations the additional powers to supply "sewer service" and to serve "military camps and bases." Then as a distinct paragraph, although without any separate enacting clause, came "Section 1-a"[1], which was completely new. Then followed an enacting clause re-enacting "Section 2" with addition of merely a few words so as expressly to permit corporate borrowings from sources in addition to federal agencies. The next provision, or emergency clause, referred only to the need of "the additional *powers* hereby conferred upon water supply corporations authorized by said Chapter 76" (emphasis ours) as the emergency, thus omitting any reference to the subject matter of Sec. 1-a"[1],

Keeping in mind the constitutional provision above quoted, we thus note two features of the amending act: (a) there is conceivably more than "one subject" involved in an act, of which Sec. 1-a prohibits all persons from taking water from the Guadalupe and Comal Rivers to other watersheds, and of which the remainder deals with the general subject of organization and corporate powers of water supply and sewer corporations; and (b) the caption of the amending act does not expressly refer to Sec. 1-a or its content, unless by the words "amending Sections 1and 2 of" the former law.

■ The petitioner Board, in upholding Sec. 1-a, relies largely on the rule that the caption of an amending act is not necessarily deficient because it merely states that a particular prior law or particular section thereof is being amended and does not give further particulars. The State v. McCracken, 42 Texas 383; Gunter v. Texas Land and Mortgage Company, 82 Texas 496, 501-2, 17 S.W. 840, 842-3; English and Scottish-American Mortgage and Investment Company, Ltd. v. Hardy, 93 Texas 289, 297-8, 55 S.W. 169, 171. But this rule, of course, has its limits. Indeed, it might well be argued that the "one subject" requirement of the Constitution, although part of the same sentence containing the title or caption requirement, should operate independently of the latter, so as to invalidate an amendatory or original act containing more than one subject, even though all of the diverse subjects be covered in full detail in the caption. In any event, as hereinafter shown, the cited rule sustaining general captions of amending acts does not apply unless the actual amendment is germane to the subject matter of the original act or, as the case may be, the portion thereof which the caption of the amendatory act declares to be amended. And

---

[1]See note one on page 113.

while conceivably a lack of germaneness in the instant case between Sec. 1-a and the rest of the Act might invalidate the section under either the "one subject" or caption requirements, the more relevant decisions speak largely in terms of the latter, and therefor so shall we.

The Gunter case, supra, voided an amendatory act because the caption, while giving *numbers* of a title and sections as being amended, omitted to state to what existing body of laws or law these numbers corresponded. The opinion acknowledges the rule relied on by the petitioner Board; but it does so with the observation " - - - although it might seem to us that a different rule would be more in harmony with the requirements of the Constitution," and shows clearly that the purposes of these requirements would be defeated by extending the rule so as, in effect, to make the body of the amendatory act itself explanatory of its own caption[2]. Similarly the English and Scottish-American Mortgage Co., case, supra, in referring to the rule, said:

"The reason - - - must be that the naming of the article to be amended directs attention to all of the provisions therein, as the subject of the amending act, and that such provisions can be ascertained by reading the article to be amended." (93 Texas 289, 298, 55 S.W. 169, 171.)

In other words, the rule invoked by the petitioner Board is justified only because and to the extent that the reader of the caption of the amendatory bill and the existing law or section to which the caption refers will thereby ascertain the subject of the amendatory bill without having to read the amendatory bill itself.

Obviously, however, if the provisions of the law or section to be amended involve a subject different from that actually dealt with in the body of the amending act, a reading of the

---

[2]"The constitution declares that the 'subject shall be expressed in the title,' and it cannot be said that this has been done where the title does no more than to furnish a reference to some other writing, document, or law from which by search the true purpose of a title may be ascertained. If such had been the intention of the people - - - the peremptory language - - - would not have been used. - - - No one would contend that a title as follows, 'An Act in reference to the subject embraced in the bill to which this is the title' would be sufficient, although such a title attached to a bill would give most easy reference to sources of information from which the subject of the contemplated law might be ascertained. - - - This is so because the Constitution requires the subject of an act to be given in the title to it, and a mere reference to something else for the information thus required to be given is not sufficient." (82 Texas 502, 17 S.W. 842).

former will not disclose to the reader the true subject of the amending act but, on the contrary, will mislead him as to the latter. And so, as in the English and Scottish-American Mortgage Co., case, supra, we find that references to the rule of general amendatory captions are couched in limiting language such as "any amendment *germane to the subject treated in the article referred to*" (emphasis supplied).

In Katz v. State, 122 Texas Crim. Rep. 231, 54 S.W. 2d 130, the body of the amendatory bill dealt with the occupation tax on "money lenders," which in the original act (Art. 7047 R.C.S. 1925) was the subject matter of Sec. *15*. The caption of the amendatory bill read, " - - - to amend Section *14* - - - relating to and imposing an occupation tax on money lenders and defiining same - - - ." Actually Sec. 14 of Art. 7047 dealt with the tax on "loan brokers," and accordingly the amendment was held void, notwithstanding that its caption reference to Sec. 14 of Art. 7047 (loan brokers) was qualified by the words "money lenders," which was the actual subject of the amendment. The language of the court is of interest.[3] Ex parte Turner, 122 Texas Crim. Rep. 357, 55 S.W. 2d 833, is to the same effect.

Thus the essential germaness of Sec. 1-a of Art. 1434a to the subject matter of Secs. 1 and 2 of the original act depends on whether a reader of the latter sections, concerning organization and powers of water supply corporations and nowhere mentioning rivers in general or in particular, would by his reading reasonably be forewarned of a subject such as a general prohibition against diverting waters from the Guadalupe or Comal Rivers to points beyond their respective watersheds. To state the question is, we think, to answer it, particularly when we consider that the hypothetical readers of the caption and earlier law are not merely members of the legislature but also "the people." See Gulf Ins. Co. v. James, 143 Texas 424, 431-2,

---

[3]"The courts of this state have held that a reference to number of an article in a code, such as our Revised Statutes, is sufficient in the title of an act amendatory thereof, to allow any amendment germane to the subject treated in the article referred to. English & Scottish-American Mortg. & Inv. Co. v. Hardy, 93 Texas 289, 55 S.W. 169; State v. McCracken, 42 Texas 384. The reason for the holding appears to be that the naming of the article to be amended directs attention to all of the provisions therein, as the subject of the amending act, and that such provisions can be ascertained by reading the article to be amended. However, when the Legislature restricts the title of an amendatory act by reference to the number in the code of the article amended, and announces its purpose to deal with the original bill in respect to particular matters therein, it is bound to govern itself accordingly, and keep within what it had itself declared would be the limits of its proposed action. Sutherland Statutory Construction (2d Ed.), vol. 1, sec. 139; State v. American Sugar Refining Co., 106 La. 553, 31 So. 181, 186."

185 S.W. 2d 966, 970. As the respondent appropriately argues, the City of San Antonio, or perhaps some individual citizen or partnership not the least interested in the subject of the organization and corporate powers of water supply corporations, but very interested in the waters of the Guadalupe and Comal Rivers. might reasonably have read the caption in question and old Secs. 1 and 2 (or, for that matter, every section) of Art. 1434a and concluded that the proposed amendment would in all probability not affect their interests.

■ We thus consider Sec. 1-a to be invalid under Sec. 35 of Art. III of the Constitution and accordingly find it unnecessary to consider the effect of Sec. 56 of Art. III, concerning local or special laws.

The judgments of the trial court and Court of Civil Appeals are affirmed.

Opinion delivered October 26, 1955.

Rehearing overruled November 23, 1955.