Louis Anthony STEWART, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–84–152–CR.

Court of Appeals of Texas,
Waco.

Nov. 7, 1985.

John W. Segrest, Waco, for appellant.

Vic Feazell, Crim. Dist. Atty., Crawford Long, Asst. Dist. Atty., Waco, for appellee.

HALL, Justice.

Pleading not guilty, appellant Louis Anthony Stewart was found by a jury to be guilty of the offense of murder. The jury assessed punishment at confinement in the Texas Department of Corrections for a term of ninety-nine years and a $10,000.00 fine. Evidence showed that after being forcibly removed from the Waco AMVETS Post by the security guard on the evening of January 22, 1984, appellant returned to the Post and fatally shot the guard with a hand gun.

In three grounds of error, appellant asserts that the trial court erred in: (1) overruling appellant's motion for discharge under the Speedy Trial Act; (2) failing to sustain a challenge for cause to a prospective juror; and (3) failing to grant a mistrial after the State improperly questioned appellant concerning his prior criminal record. We affirm the conviction, holding among other rulings that the Speedy Trial Act is unconstitutional.

In his first ground of error, appellant contends that he was denied his right to a speedy trial in violation of Vernon's Ann.C. C.P. art. 32A.02. The relevant chronology of events is as follows:

| | |
|---|---|
| Arrested and Charged with Offense | January 27, 1984 |
| Indictment Filed | March 22, 1984 |
| Arraigned | April 11, 1984 |
| State announced ready Postponement of April 23rd trial date due to pre-trial hearings (Trial reset for May 21st) | |
| State's First Motion for Continuance | May 21, 1984 |
| Based on absence of witness (Trial reset for July 9th) | |
| State's Second Motion for Continuance | June 27, 1984 |
| State announced ready, but moved for continuance based on absence of one of the prosecutors (Trial reset for July 30th) | |
| Defendant's Motion for Speedy Trial | July 10, 1984 |
| (Trial reset for August 13th based on Judge's vacation) | |
| Defendant's Motion to Dismiss for Violation of Speedy Trial Act | August 7, 1984 |
| Hearing on Motion; Trial Began | August 13, 1984 |

Appellant contends that the State has not shown that it was ready for trial within the 120-day limit prescribed by the Speedy Trial Act for felony cases. We believe the proof shows the State was ready within the time limit.

The State's announcement of ready on April 11, 1984, was uncontroverted by appellant. Thus, the announcement effectively tolled the running of the Act until the presumption of readiness was sufficiently rebutted by appellant. *Canada v. State*, 660 S.W.2d 528, 529 (Tex.Cr.App. 1983). Appellant claims, however, that the announcement of ready was rendered ineffective by the State's first motion for a continuance based on the absence of a material witness, filed on May 21, 1984. He argues that the witness was not material because she never testified at trial. Furthermore, appellant maintains that the State made an insufficient showing under article 32A.02, section 4(6)(A) to justify exclusion of the time period based on the unavailability of a witness because there was no evidence that the witness' testimony was material, that the witness would

become available in the near future, or that due diligence was used to procure the testimony.

■ In pertinent part, section 4 of article 32A.02 provides:

Sec. 4. In computing the time by which the state must be ready for trial, the following periods shall be excluded:

(6) a reasonable period of delay resulting from a continuance granted at the request of the state if the continuance is granted:

(A) because of the unavailability of evidence that is material to the state's case, if the state has exercised due diligence to obtain the evidence and there are reasonable grounds to believe the evidence will be available within a reasonable time.

However, unlike section 4(6)(A), section 4(6)(B) and section 4(10) do not necessitate a showing of materiality, availability, or due diligence. Those sections provide that the State may justifiably exclude a reasonable period of time upon a showing of "exceptional circumstances." *McCartin v. State*, 662 S.W.2d 794, 798 (Tex.App.—[13th Dist.] 1983, pet. ref'd). The absence or illness of a principal witness will constitute such an exceptional circumstance. *Lloyd v. State*, 665 S.W.2d 472, 475 (Tex. Cr.App.1984); *Canada*, 660 S.W.2d at 530; *McCartin*, 662 S.W.2d at 797–98. In the case before us, the State's proof established that the witness in question was unable to testify because she was required to take her child to the hospital and that her testimony was considered material by the State at the time. Thus, even if the State made an insufficient showing under section 4(6), we hold that the State properly invoked the exclusionary provisions of the Act relating to exceptional circumstances. *Canada*, 660 S.W.2d at 530. Therefore the Act was tolled from the date of the State's first announcement of ready on April 11th until the date of the second motion for a continuance on June 27th.

The State's second motion for a continuance presents a different question. The motion was orally made, without the presence of appellant. The lead prosecutor later explained at the hearing on appellant's speedy trial motion:

Mr. Crawford Long [assistant district attorney] had worked intensely with me in preparing for this case. In our opinion it is a case that requires two prosecutors to present properly. Mr. Long had been selected to go to ... a two week prosecutor's program.... [H]e was ordered to go by the elected District Attorney.... [Because] he had helped me prepare for the case and was fully aware of all the facts involved, and intended to present a considerable amount of the evidence himself, I moved that the case be continued to allow me to have him present to try the case. At that time I had not yet made my decision to resign from the District Attorney's Office, and felt his assistance in presenting the case would be very important.

A last minute change in plans prevented Mr. Long from attending the conference. The case was ultimately tried by Mr. Long and another prosecutor because the lead prosecutor resigned from the District Attorney's office prior to trial.

■ The Speedy Trial Act addresses itself to prosecutorial delay. *Barfield v. State*, 586 S.W.2d 538, 541 (Tex.Cr.App. 1979). In assessing speedy trial questions, focus is placed on delay that is within the control of the prosecutor. *Lloyd*, 665 S.W.2d at 475. In our case, there was no requirement that two prosecutors participate in the trial. Furthermore, apparently the District Attorney controlled whether Mr. Long attended the seminar. We hold that this does not constitute an exceptional circumstance under section 4(10), and that the period of time accorded the State for this delay should be deducted from the 120 days allowed.

■ The final period of delay, from July 30th to August 13th, was attributable under the record to the trial judge's vacation and inability to secure a replacement. Thus, this period cannot be taxed against the State. *Ostoja v. State*, 631 S.W.2d 165,

168 (Tex.Cr.App.1982); *Barfield*, 586 S.W.2d at 541.

Therefore, we believe the following are the maximum deductions that may be made for appellant from the State's 120 days for readiness:

> January 27th (arrest) to April 11th (uncontroverted announcement of ready) = 75 days
>
> June 27th (second motion for continuance) to July 30th (date of reset) = 34 days

The 109 days deducted from the 120 days allowed shows that the State was ready for trial within the time limitation required by the Speedy Trial Act. Accordingly, we hold that appellant's speedy trial claim is factually without merit.

■ In any event, even if the State did not meet the time limit, there is another reason why appellant's claim under the Speedy Trial Act must be overruled. The State contested appellant's motion to dismiss under the Act on the ground that the legislation creating the Act violated Article III, Section 35 of the Texas Constitution. Following a pretrial hearing on the motion, the trial court denied both appellant's motion and the State's claim of constitutional defect. However, we believe that the Act is unconstitutional because its caption violated Article III, Section 35 of the Texas Constitution as asserted by the State.

Article III, Section 35 of the Texas Constitution provides:

> No bill, (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed.

The Speedy Trial Act was added by Acts 1977, 65th Leg., p. 1970, ch. 787, § 1. The caption to this Act provided as follows:

> An Act relating to a speedy trial of criminal cases; amending the Code of Criminal Procedure, 1965, as amended, by adding Chapter 32A, by adding Articles 17.151 and 28.061, and by amending Articles 29.02 and 29.03; providing for an effective date; and declaring an emergency.

In *Ex parte Crisp*, 661 S.W.2d 944 (Tex. Cr.App.1983), an act amending the Texas Controlled Substances Act was declared unconstitutional because the caption of the amendatory bill violated Article III, Section 35 of the Texas Constitution. The caption there provided: "An Act relating to offenses and criminal penalties under the Texas Controlled Substances Act." On rehearing in the *Crisp* case, a majority of the Court of Criminal Appeals held that this caption "is utterly defective for the reasons stated in the concurring opinion on original submission." 661 S.W.2d at 957. On original submission in that case the concurring opinion stated:

> As the majority reads it, that phrase [An Act *relating* to offenses and criminal penalties] "refers to *changes* in penalties and offenses ...," P. 947. On the other hand, the dissent says the caption "puts a reader on notice of the *treatment* of one subject and alerts him to [ascertain] the details of that subject," characterizing it as a "signal." P. 953. In my view "relating to" does not mean "changes in" nor is it enough under the first sentence of § 35 that a caption gives a signal.

Plainly, the caption to the Speedy Trial Act suffers the same fatal defect as that found by the Court of Criminal Appeals in the caption to the amendment to the Texas Controlled Substances Act. A reading of the Act that created the Speedy Trial Act discloses that it makes many substantive changes and additions in the law, but the caption contains no hint of the content and extent of those changes other than by and through the phrase "relating to." The caption tells its reader that the Act has something to do with a speedy trial in a criminal case, but it never states what the Act actually does in that relation. For example, the caption does not suggest that the Act will

accomplish substantial changes in our criminal laws including mandatory discharge of an accused for a slight and inadvertent violation of the Act by the prosecution, regardless of the heinousness of the offense or its commission. Furthermore, the caption gives no hint that the Act will effect a major change in the *bail* provisions of the Code of Criminal Procedure, contained in new article 17.151 created by the Act, even though the accused might actually receive a speedy trial required under other new provisions of the Act.

Our concurring opinion's disagreement on the caption issue rests largely on the belief that the caption heads up an "amendatory Act," but of course this is not true as to the Speedy Trial Act which is newly created in the Act other than in the sense that this new legislation amends the Code of Criminal Procedure. The caption does not alert a reasonable reader or even a cautious reader to this fact of new legislation, stating simply that the Act "relates" to a speedy trial. Nevertheless, our concurring opinion states that the Act "did precisely what its caption notified the reader that it would do; it amended the Code of Criminal Procedure by adding Chapter 32A (Speedy Trial Act)...." This argument was rejected by the final majority in *Crisp*, as follows:

> We hold the caption is utterly defective for the reasons stated in the concurring opinion on original submission, and overrule the state's motion for rehearing. It requires little imagination to see how the requirements of Art. III, Sec. 35, supra, would be rendered totally useless if the caption in this case were sufficient. In the future it would be sufficient to use one of the few standard form captions, such as "An Act relating to the Penal Code," "An Act relating to the Code of Criminal Procedure," "An Act relating to the Family Code," etc. We reject arguments that require such an unacceptable conclusion.

661 S.W.2d at 597. Our concurring opinion also recommends by footnote the "fair notice to a reasonable reader" test suggested by three members of the Court of Criminal Appeals in the *Crisp* case on original submission, but this test and the three-member opinion raising it were abandoned by the final majority opinion on the State's motion for rehearing. This final majority opinion made clear that a caption stating merely that its Act "relates" to a named subject says nothing about the subject of the Act itself, presents nothing for testing by any standard for sufficiency under Article III, Section 35 of our state constitution, and accordingly is constitutionally invalid.

For these reasons we believe that the Speedy Trial Act is unconstitutional and that the Court of Criminal Appeals will hold it is unconstitutional. See *Noel v. State* (Tex.Cr.App.1984), pending on State's motion for rehearing granted, May 30, 1984. In *Noel*, the Court has given a strong signal that the Act will probably be ruled unconstitutional: Four of the judges declared that it is unconstitutional because of the inadequate caption under the ruling in *Crisp*, one declared the Act was constitutional, and four refused to rule on the question of constitutionality because it was not raised in the trial court.

We have also reviewed appellant's claim under the standard established in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101, 117 (1972), and we hold that appellant's constitutional right to a speedy trial was not violated. Appellant's first ground of error is overruled.

In his second ground of error, appellant complains that the trial court erred in failing to grant his challenge for cause to a prospective juror because the juror never stated unequivocally that he would follow the presumption of innocence. During voir dire, the juror expressed the view that "there is got to be something here or we wouldn't be here," and that "where there is smoke, there is fire." Upon further questioning, the juror stated that he guessed he could follow the presumption of innocence; he did not know whether or not appellant had done anything; he did not have a tendency to side with either party; and that if he was not convinced by the evidence of

appellant's guilt, he would vote accordingly. After his challenge for cause was overruled, appellant requested an additional peremptory strike. Appellant's counsel stated to the court:

> The Court's failure to exclude him forced us to take on the jury a juror which is unacceptable to us. We would request an additional peremptory challenge or strike.

This request was denied.

The Court of Criminal Appeals in *Moreno v. State*, 587 S.W.2d 405, 408 (Tex.Cr. App.1979), held that a "blanket statement" that fails to designate a named juror is insufficient in and of itself to show that any objectionable juror served on the jury. Because there is no showing in our record that appellant was forced to take a particular named juror who was objectionable to him, no error is shown. *Doggett v. State*, 530 S.W.2d 552, 557 (Tex.Cr.App.1975); *Pentycuff v. State*, 680 S.W.2d 527, 529 (Tex.App.—[10th Dist.] 1984, pet. ref'd). Appellant's second ground of error is overruled.

▮ In his third ground of error, appellant contends that the trial court erred in failing to grant his motion for mistrial made on the ground that the State had improperly questioned him before the jury about his prior criminal record.

The record reflects that appellant filed a Motion in Limine requesting that evidence of any prior arrests, convictions, or pending charges against him be prohibited from being placed before the jury by the State without first obtaining a ruling on such from the court. Appellant's motion was granted. Appellant's attorney subsequently questioned appellant before the jury as follows:

Q. All right. Let me ask you this, have you ever been convicted of a felony in this state or any other state, something you could have [to] go to the penitentiary for?

A. No. I was convicted of a misdemeanor, Possession of Stolen Property.

Q. Okay. And that was where? Louisiana?

A. Yes.

Q. All right. Did you do your time on that?

A. Yes, sir. I was given a year.

Q. Okay. Other than that, you have never been convicted of any other type of offense?

A. No.

The State then cross-examined appellant:

Q. Okay. Now, just so we don't mislead the jury at all, I want to be real clear about this. You said that you have never been convicted of a felony?

Before the question was answered, appellant objected and the jury was excused. Appellant argued that the State had placed undue emphasis on the word "convicted." He maintained that in light of the State's previous voir dire comments that some people may have committed numerous crimes before they were ever convicted, the State's present emphasis on the word "convicted" would lead the jury to believe that appellant may have been *arrested* for prior felonies, but was never convicted. Appellant's objection was sustained, and the jury was instructed to disregard the question. Appellant's motion for mistrial was denied.

In light of appellant's prior testimony on direct examination, and the fact that the question was never answered, we hold that any error in the prosecutor's inflection was cured by the instruction to disregard. *Gonzales v. State*, 685 S.W.2d 47, 48–51 (Tex.Cr.App.1985); *Carey v. State*, 537 S.W.2d 757, 759 (Tex.Cr.App.1976); *Clark v. State*, 500 S.W.2d 469, 470–71 (Tex.Cr. App.1973). Appellant's third ground of error is overruled.

The judgment is affirmed.

THOMAS, Justice, concurring.

Except for the holding that the Speedy Trial Act (Act) is unconstitutional because its caption violates Section 35 of Article III of the Texas Constitution, I agree with the reasons given for affirming Appellant's

conviction. Thus, I concur in the result reached.

The Act's constitutionality cannot be determined by considering its stringent effects on the criminal justice system because whether the Act represents a wise public policy for our state is a question for the legislature and not the courts to determine. *See Texas State Bd. of Barber Exam. v. Beaumont Bar. Col.,* 454 S.W.2d 729, 732 (Tex.1970). Therefore, my disagreement on the constitutional issue is not based upon the Act's arguable merits. With this preface, I now will explain why I believe that the Act's caption complies in all respects with this particular constitutional provision.

As far as I can determine, the Texas Supreme Court and the Court of Criminal Appeals have never interpreted Section 35 of Article III as requiring the caption of a criminal enactment to meet a stricter test of compliance than the caption of a civil statute. Therefore, I interpret this constitutional provision as requiring one standard of compliance. The harmonious interpretation and application of this constitutional provision to both fields of law is undoubtedly made more difficult by Texas having two coequal courts-of-last-resort, each being responsible for the definitive interpretation of the constitution in their field of law. However, their coequal status has not kept the Texas Supreme Court and the Court of Criminal Appeals from striving for a harmonious, one-standard interpretation, as evidenced by their frequent citing of the other's decisions in opinions interpreting and applying this particular provision. Whether *Crisp* has been correctly decided is for the Texas Court of Criminal Appeals to determine because we, as an intermediate appellate court, are bound by its decision. However, we must interpret and apply the holding in *Crisp,* and that is where I differ with my brethren.

The caption of Senate Bill 1043 which adopted the Act reads: "An Act relating to a speedy trial of criminal cases; amending the Code of Criminal Procedure, 1965, as amended, by adding Chapter 32A, by adding Articles 17.151 and 28.061, and by amending Articles 29.02 and 29.03; providing for an effective date; and declaring an emergency." Act of June 16, 1977, ch. 787, 1977 Tex.Gen.Laws 1970. The State alleges that this caption violates Section 35 of Article III which provides:

> *No bill,* (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) *shall contain more than one subject, which shall be expressed in its title.* But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed.

Tex. Const. art. III, § 35 (emphasis added). Relying on *Ex parte Crisp,* 661 S.W.2d 944 (Tex.Cr.App.1983), the State argues that the caption is constitutionally defective because it gave no "hint" of the subject matter and contents of the bill, other than generally stating that it related to a speedy trial of criminal cases. In particular, the State complains that the caption failed to give adequate notice to the reader that the bill made major changes in the bail provisions of the Code of Criminal Procedure and that the Act also required the mandatory dismissal with prejudice of a criminal case if the Act were violated by the State.

My brethren accept the State's argument and hold that the caption "suffers the same fatal defect" as did the caption in *Crisp.*[1] In support of their holding, they note that the caption failed to notify a reader that the body of Senate Bill 1043 made many substantial changes and additions in the law, required the mandatory dismissal of a prosecution for even an inadvertent violation of the Act by the State and made changes in the bail provisions. Specifically,

---

1. The Act's caption has also been described as suffering from "the exact malady diagnosed in *Crisp." Noel v. State,* —— S.W.2d —— No. 827–

83 (Tex.Cr.App. March 14, 1984) (McCormick, J., dissenting) (pending on motion for rehearing).

they find fault with the caption because, although notifying the reader that the Act has something to do with a speedy trial in a criminal case, "it never states what the Act actually does in that relation." Although *Crisp* dealt with the caption of an amendatory act, as does Senate Bill 1043, I do not consider that opinion as controlling because the caption in *Crisp* is distinguishable from the caption of Senate Bill 1043. Furthermore, because Senate Bill 1043 is an amendatory act, I view the so-called deficiencies pointed out by my brethren as immaterial.

The caption in *Crisp* read as follows: "An act relating to offenses and criminal penalties under the Texas Controlled Substances Act." Act of May 29, 1981, ch. 268, 1981 Tex.Gen.Laws 696. The most important distinction between the two captions is that the caption in *Crisp* did not specify the chapter, article or section of the law being amended. This is a critical difference because, under such circumstances, the caption had to express the general subject of the legislation, and it could not, as pointed out below, rely on the original act to notify the reader of the general subject of the amendments. Another important distinction is that the caption in *Crisp* referred to the Controlled Substances Act as the act being amended but failed to notify the reader that the bill also amended the Penal Code and the Code of Criminal Procedure in addition to the Controlled Substances Act. *Crisp*, 661 S.W.2d at 946. Under such circumstances, the Court of Criminal Appeals held that the caption "failed to convey to the reader that character and quality of information the first sentence of § 35 requires for fair notice to 'legislator, lawyer or "man on the street." ' " *Crisp*, 661 S.W.2d at 950 (Clinton, J., concurring on petition for discretionary review) (quoting *Schlichting v. Texas Board of Medical Exam.*, 158 Tex. 279, 310 S.W.2d 557, 561 (1958)).

In contrast, the body of Senate Bill 1043 did precisely what its caption notified the reader that it would do; it amended the Code of Criminal Procedure by adding Chapter 32A (Speedy Trial Act), by adding

articles 17.151 and 28.061 (bail provisions), and by amending articles 29.02 and 29.03 (continuance provisions). In addition, the caption notified the reader that the bill was an act "relating to a speedy trial of criminal cases". In Senate Bill 1043, all of the amendments were germane to and not too remote from the Code of Criminal Procedure. Thus, the body of Senate Bill 1043 was not broader than its caption and its caption was not misleading as was the caption in *Crisp*. Because of these striking differences in the two captions, I do not view the decision in *Crisp* as controlling.

The rule seems to be well-settled that the caption of an amendatory bill does not need to state the subject or specify the nature of the amendments where the caption specifies the chapter, article or section of the body of law being amended and the subject matter of the amendments are germane to or embraced within the title of the law being amended. *See Smith v. Davis*, 426 S.W.2d 827, 833 (Tex.1968); *Shannon v. Rogers*, 159 Tex. 29, 314 S.W.2d 810, 815 (1958); *Schlichting*, 310 S.W.2d at 562; *White v. State*, 440 S.W.2d 660, 665 (Tex. Cr.App.1969). The rule has been stated as follows:

> "The title of an amendatory act is ordinarily sufficient to allow any amendment germane to the subject of the original statute, if it properly specifies the chapter and section, or the revision and article, to be amended. *When the title of the original act is sufficient to embrace the matters covered by the provisions of the amendatory act, the title of the latter act is not required to state the subject of the law amended or to specify the nature of the proposed amendment.* But new substantive matter contained in an amendment, which is not germane or pertinent to that contained in the provision amended, is invalid as legislation upon a matter not expressed in the title of the amendatory act."

*Walker v. State*, 134 Tex.Crim. 500, 116 S.W.2d 1076, 1078 (1938) (approving the opinion of the Commission of Appeals) (quoting 39 Tex.Jur. 102) (emphasis added),

*cited with approval in White,* 440 S.W.2d at 665.[2]

The reason behind this rule is succinctly stated in *Katz v. State,* 122 Tex.Crim. 231, 54 S.W.2d 130, 132 (1932) (approving the opinion of the Commission of Appeals): "The reason for the holding appears to be that the naming of the article to be amended directs attention to all of the provisions therein, as the subject of the amending act, and that such provisions can be ascertained by reading the article to be amended." Here, the caption clearly identified the Code of Criminal Procedure as the body of law being amended and further specified that the Code was being amended by, among other things, adding Chapter 32A. Under such circumstances, the critical question then becomes whether the content of Chapter 32A is germane to the content of the portion of the Code being amended. *See Schlichting,* 310 S.W.2d at 561. An amendatory bill is germane to an original act where the contents of the amendment are closely allied with or appropriate or relevant to the content of the law being amended. *Id.* The test is the closeness of the relationship of the new provisions or substantial changes to what went before. *Id.* at 562. The content of Chapter 32A, which adopted the Speedy Trial Act and requires the mandatory dismissal of a prosecution when the Act has been violated, is germane to the content of Chapter 32, which provides for the dismissal of prosecution under other circumstances. Therefore, the caption of Senate Bill 1043 would be sufficient under Section 35 of Article III

even if the phrase "relating to a speedy trial of criminal cases" had been omitted.

Furthermore, under the circumstances, the caption did not have to apprise the reader of the details or the precise effect of the body of the bill. *See White,* 440 S.W.2d at 665; *Smith,* 426 S.W.2d at 833. Thus, the caption was not deficient, as my brethren charge, because it failed to tell the reader that the body of the bill made "many substantive changes and additions in the law" or that it required the "mandatory discharge of an accused for a slight and inadvertent violation of the Act by the prosecution, regardless of the heinousness of the offense or its commission." Because the caption notified a reader that it was amending the Code of Criminal Procedure by adding Chapter 32A (Speedy Trial Act) and because the content of Chapter 32A is germane to Chapter 32, the portion of the Code being amended, I believe that the caption complies in all respects with Section 35 of Article III. This same rule applies with equal logic and force to any suggestion that the caption was insufficient because it did not notify the reader of the details or the precise effects of the amendments to the bail and continuance provisions of the Code of Criminal Procedure.

Additionally, I believe that the caption of Senate Bill 1043 also complied with Section 35 of Article III because it notified a reader that it was an act "relating to a speedy trial of criminal cases." To comply with the constitutional requirement that the subject of a bill "shall be expressed in its title", the caption needs only to state the

---

**2.** Lest this court unknowingly stray too far from this rule, the following decisions best illustrate the liberal construction to be accorded a caption and the constitutional requirement when the caption of an amendatory act specifies the chapter, article or section of the body of law being amended and the amendments are germane thereto: *Walker,* 116 S.W.2d at 1078 (holding that a caption reading, "An Act amending Article 802, Penal Code of Texas, 1925, as amended by Chapter 424, Acts of the First Called Session, Forty-fourth Legislature, and declaring an emergency", was sufficient), *cited with approval in White,* 440 S.W.2d at 665; *Nichols v. State,* 32 Tex.Crim. 391, 23 S.W. 680, 681 (1893) (on re-

hearing) (holding that a caption stating, "An act to amend article 528, chapter 7, title 15, of the Penal Code of the state of Texas, as amended by the act of the 20th legislature, approved February 25, 1887", was sufficient); *State v. McCracken,* 42 Tex. 383, 384 (1875) (holding that a caption reading, "An Act to amend an Act entitled 'An Act to adopt and establish a Penal Code for the State of Texas, approved August 26, A.D. 1871'", met the requirement of Section 35), *quoted with approval in Gunter v. Texas Land & Mortg. Co.,* 82 Tex. 496, 17 S.W. 840, 843 (1891); *Board of Water Engineers v. City of San Antonio,* 155 Tex. 111, 283 S.W.2d 722, 727 n. 3 (1955).

*general subject* of the legislation and not its details. *Robinson v. Hill,* 507 S.W.2d 521, 525 (Tex.1974). Furthermore, the constitutional provision and the questioned statute are to be liberally construed in favor of constitutionality. *Id.* at 524. However, the caption must be specific enough to "put any reasonable caption reader on notice that he will find new matter in the body of the bill." *Bates v. State,* 587 S.W.2d 121, 128–29 (Tex.Cr.App.1979).[3]

I believe that any reasonable caption reader, whether a legislator or interested citizen, who was interested in legislation affecting the speedy trial of criminal cases, would have been put on notice that he would find new matter "relating to a speedy trial of criminal cases" in the body of Senate Bill 1043. A cursory reading of the body of the bill would have disclosed that the Act, with all its stringent effects, was being enacted as a part of the Code of Criminal Procedure. Surely, an average legislator or citizen would not have been given the impression from the caption that further reading of the body of the bill was unnecessary because it did not contain provisions relating to that subject.

My brethren believe that the caption was deficient because it failed to inform the reader of the stringent effects of the Act. To accept such a premise would be to require the caption to state the details of the Act and its precise effects. As previously noted, such is not required. *See Robinson,* 507 S.W.2d at 525. Furthermore, to re-quire the caption to also notify the reader that the body of the bill made "substantial changes in our criminal laws", including "a major change in the *bail* provisions of the Code of Criminal Procedure," would be to apply a different standard of compliance. As the Texas Supreme Court pointed out in *Schlichting,* "[t]he judicial rule under discussion cannot possibly mean that the amendment, to be valid, must contain nothing new and no change that is important." *Schlichting,* 310 S.W.2d at 562. Logically, the purpose of an amendatory act is to make changes, both major and minor, in the existing law. Whether those changes are major, as in this case, is within the purview of the legislature and not the courts. Therefore, I consider the so-called deficiencies pointed out by my brethren as being immaterial to the question of whether the caption adequately stated the general subject of Senate Bill 1043 when it notified the reader that the bill was an act "relating to a speedy trial of criminal cases." Accordingly, for all of the above reasons, I cannot agree with the holding that the caption of Senate Bill 1043 violates Section 35 of Article III of the Texas Constitution.

---

**3.** In his opinion on the State's petition for discretionary review in *Crisp,* Judge Miller suggested that a caption must be specific enough "to give a reasonable reader fair notice of the subject and contents of the bill." *Crisp,* 661 S.W.2d at 946 (citing *Bates,* 587 S.W.2d at 128–29). Furthermore, he suggested that a "useful way to apply the standard" is as follows:

> "If [an average legislator or interested citizen] interested in legislation on a particular subject would be prompted by the title to examine the body of the bill for provisions relating to that subject, then the title is sufficient. But if he would be likely to get the impression from the title that further reading is unnecessary because the bill does not relate to that subject then the bill is unconstitutional to the extent that it deals with that subject."

*Crisp,* 661 S.W.2d at 948 n. 3 (quoting *City of Brownsville v. Public Utility Commission,* 616 S.W.2d 402, 407 (Tex.Civ.App.—Texarkana 1981, writ ref'd n.r.e.)). Without expressly adopting or disavowing Judge Miller's statement of the test or his "useful way" of applying it, Judge Clinton, in his concurring opinion on petition for discretionary review, which was apparently adopted as the majority's position in the opinion on the State's motion for rehearing, recognized that the "central theme of the decisions is that the constitutional mandate under consideration 'is to facilitate and protect the legislative process by affording legislators and other interested people a ready and reasonably accurate means of knowledge of the contents of bills without their having to read the full text.'" *Crisp,* 661 S.W.2d at 949 n. 4 (quoting *White,* 440 S.W.2d at 664).