**CITY OF SAN ANTONIO et al.,**
Appellants,

v.

**BOARD OF WATER ENGINEERS OF the**
State of TEXAS et al., Appellees.

No. 10738.

Court of Civil Appeals of Texas.

Austin.

March 23, 1960.

Rehearing Denied April 20, 1960.
Second Motion for Rehearing Denied
May 11, 1960.

Carlos Cadena, City Atty., San Antonio, Boyle, Wheeler, Gresham, Davis & Gregory, A. W. Worthy, Robert Sawtelle, San Antonio, for appellant.

Will Wilson, Atty. Gen., Houghton Brownlee, Jr., James D. McKeithan, Asst. Attys. Gen., for Bd. of Water Engineers.

E. M. Cape, San Marcos, Vinson, Elkins, Weems & Searls, Victor W. Bouldin, Houston, for Guadalupe-Blanco River Authority.

William S. Fly, W. B. Mallette, Victoria, for city of Victoria.

O. E. Threlkeld, Seguin, for city of Seguin.

Frank B. Sheppard, Cuero, for city of Cuero.

R. L. Miller, Gonzales, for city of Gonzales.

C. E. Riedel, New Braunfels, for city of New Braunfels.

Roy Barton, Port Lavaca, for West Side Calhoun County Nav. Dist.

Howard G. Hartzog, County Judge, L. J. Fields, County Atty., Port Lavaca, for Calhoun County.

R. A. Weinert, Seguin, for Texas Power Corp. and Texas Hydro-Electric Corp.

Baker, Botts, Andrews & Shepherd, John S. Sellingsloh and James L. Shepherd, Jr., Houston, for Union Carbide Corp. and E. I. du Pont de Nemours and Co.

GRAY, Justice.

The City of San Antonio and its Water Works Board of Trustees (all later referred to as the City) appealed from an order of

**326**

The Board of Water Engineers of the State of Texas (later referred to as the Board) denying the City's application for a permit to appropriate 100,000 acre-feet of water per annum of the unappropriated water to be stored in The Canyon Dam Reservoir. The proposed use of the water was for municipal purposes. Before a trial on the merits of the appeal in the District Court Guadalupe-Blanco River Authority (later referred to as GBRA) filed a motion praying that the City's appeal and cause of action be dismissed as moot. Various interested parties intervened and were aligned with GBRA before the Board and before the trial court. They are so aligned here.

Upon a hearing the district court dismissed the City's cause of action as moot. This appeal is from that order.

The Canyon Dam and Reservoir is a flood control and conservation project to be constructed on the Guadalupe River upstream from the City of New Braunfels. Construction work on the project has begun.

Before proceeding further we will note that there is no controversy here as to the authorized construction of the project and impounding water in the reservoir. The controversy relates to the use of water to be stored in the reservoir and committed to the regulation of the Board.

On March 2, 1953 the City sought to establish its priority of right to take water from the Guadalupe River watershed in the event it received a permit therefor by then tendering to the Board for approval and filing a presentation under Art. 7496, Vernon's Ann.Civ.St. The Board declined to file the presentation and the controversy reached the Supreme Court. On October 26, 1955 that court affirmed the judgment of this court holding that the City was entitled to avail itself of the remedies provided by Art. 7496, supra, and Art. 7590, Vernon's Ann.Civ.St. Board of Water Engineers of State of Texas v. City of San Antonio, 155 Tex. 111, 283 S.W.2d 722. The question of priority of right was not decided.

On January 11, 1956, the City filed with the Board its application for a permit to appropriate, for municipal purposes, 100,000 acre-feet of water per annum of the unappropriated water from the Guadalupe River (actually water to be stored in the Canyon Dam Reservoir). The application, as is required by the rules of the Board, described a proposed dam and reservoir. This description appears to be the same as the dam and reservoir designed by the District Office of the United States Army Engineers. The application also contained a proposal by the City to pay additional costs of construction necessary to impound the water applied for.

On March 6, 1956 GBRA filed its application with the Board for a permit "to appropriate and divert the total dependable yield of the reservoir, which is 102,700 acre-feet of water per annum, from the unappropriated waters of the State." 50,000 acre-feet of the water sought was for municipal and domestic uses and the balance for other uses. Also GBRA's application applied for an additional appropriation.

"In addition, Applicant seeks to use, for the generation of hydroelectric power, the same 102,700 acre-feet of water per annum plus an additional 346,400 acre-feet of water per annum which, on very rare occasions, will be available from the waters temporarily stored in the flood control pool of the reservoir, or a total of 449,100 acre-feet per annum for the generation of hydroelectric power. Except for a small conduit for the emergency release of normal flow, the only means presently contemplated for the release of flood waters below the spillway level of the reservoir is through the turbines of hydroelectric power units. The Applicant also seeks the right to use the channel of the Guadalupe River for conveyance of these appropriated waters to any desired downstream point of diversion."

The two applications were consolidated and on July 5, 1957 a majority of the Board

(two members) denied the City's application. The third member dissented and moved to deny the application in part and to grant it to the extent of authorizing the appropriation of not to exceed 60,000 acre-feet of water per annum. On the same day and by the same vote the Board granted GBRA's application to the extent of 50,000 acre-feet per annum for municipal purposes. GBRA was granted a permit January 22, 1959.

The City has appealed from the Board's orders granting GBRA's application and granting it a permit. That appeal is pending before the district court and is entirely separate from the appeal by the City from the Board's order denying its application.

On September 20, 1957 GBRA entered into contract with the United States whereby it agreed to contribute to the cost of construction of Canyon Dam and was granted a right to utilize storage space in the reservoir. The provisions of this contract relevant here are:

"*Article 1. Water Storage Space.*— The Authority shall have the right to utilize the storage space in the Project between elevations 800 feet above mean sea level and 909 feet above mean sea level as deemed necessary by the Authority to impound water in the Project and make such diversions as granted to the Authority by the Board of Water Engineers for the State of Texas, or its successors, to the extent that such storage space will provide. The Authority shall have the right to withdraw water from the aforesaid storage space, or to order releases therefrom to be made by the Government at any time so long as the elevation of the water within the Project is above elevation 800 feet above mean sea level, provided, that such releases when combined with local runoff below the dam will not cause flooding. It is understood and agreed that by mutual consent of both parties the Government shall have the right to draw down the conservation

pool during periods of flood regulation. The Government shall not be responsible for diversion by others nor will it become a party to any controversies between users of the aforesaid storage space.

\* \* \* \* \* \* \*

"*Article 2. Federal and State Laws.* —The Authority shall utilize such storage space in a manner consistent with Federal and State laws.

"*Article 3. Regulation of The Use of Water.*—The regulation of the use of water in the aforesaid storage space shall be the responsibility of the Authority and shall not be considered a part of this contract.

"*Article 4. Consideration and Payment.*—

"a. In consideration of the payments provided in this contract to be paid by the Authority to the Government, it is agreed that the Government will provide the Authority storage space in the Project as provided in Article 1. In consideration of the Government's providing the said storage space to the Authority, it is agreed that the Authority shall pay the following sums to the Government:

"(1) $1,400,000 which shall be paid in such manner and at such time or times during the period of construction of the Project as the Contracting Officer shall determine."

The two applications, supra, applied for appropriation of water from reservoirs to be created at the same location—Canyon Dam Reservoir. The City's application described a dam and reservoir designed by the District Office of the Corps of United States Army Engineers. The Washington Office of the Engineers rejected this dam and reservoir and in lieu thereof designed a dam and reservoir meeting the requirements of Public Law 780 later quoted. GBRA's application described a dam and

reservoir smaller than those described in the City's application.

Appellees' motion in the trial court and their argument here is to the effect that the City's cause of action is moot because: Since the denial of the City's application by the Board, the Corps of Army Engineers of the United States has completed the design for the Canyon Dam and Reservoir with a maximum capacity less than that proposed by the City's application. The authority to contract with the Secretary of the Army (formerly Secretary of War) has been repealed by Congress. Construction of the project has begun and the enlargement of the dam to supply the City with the water applied for would require or involve major structural changes which can be made only upon the approval of Congress. The contract between GBRA and the United States makes GBRA the lawful and exclusive owner of the right to use the full amount of conservation storage in the reservoir. And finally, in any event, relief cannot be granted to the City which could authorize it to appropriate and divert 100,000 acre-feet of water from the reservoir.

The history of the authorization, by Congress, of the construction of Canyon Dam and Reservoir begins some years back. We will quote from the Acts of Congress deemed most pertinent to our inquiry here.

Public Law 780, U.S.Code Congressional and Administrative News, Vol. 1, p. 1479 et seq. This law passed by the 83rd Congress, 2nd Session, in 1954, in part provides:

"That the following works of improvement of rivers and harbors and other waterways for navigation, flood control, and other purposes are hereby adopted and authorized to be prosecuted under the direction of the Secretary of the Army and supervision of the Chief of Engineers, in accordance with the plans and subject to the conditions recommended by the Chief of Engineers in the respective reports hereinafter designated: *Provided,* That the

provisions of section 1 of the River and Harbor Act approved March 2, 1945 (Public, Numbered 14, Seventy-ninth Congress, first session), shall govern with respect to projects authorized in this title; and the procedures therein set forth with respect to plans, proposals, or reports for work of improvement for navigation or flood control and for irrigation and purposes incidental thereto, shall apply as if herein set forth in full:

\*   \*   \*   \*   \*   \*

"The works of improvement on Guadalupe River, Texas, authorized by section 2 of the Act entitled 'An Act authorizing the construction, repair, and preservation of certain public works on rivers and harbors, and for other purposes', approved March 2, 1945 (59 Stat. 17), insofar as such authorization provides for construction of the Canyon Dam and Reservoir, is hereby modified to provide for the construction, operation, and maintenance under the direction of the Secretary of the Army and supervision of the Chief of Engineers of the Canyon Dam and Reservoir in accordance with the provisions of this Act. The Canyon Dam and Reservoir shall be constructed with a gross reservoir capacity of approximately seven hundred and fifty thousand acre-feet of which three hundred and eighty thousand acre-feet shall be for flood control and sedimentation) for purposes of flood control, conservation, stream-flow regulation, and provision for sedimentation, and, if practicable, for purposes of development of electric power, at an estimated total cost of $13,300,000.

\*   \*   \*   \*   \*   \*

"The costs allocated to local interests under this section shall be not less than $1,400,000, and shall be paid by them to the Chief of Engineers as provided in this Act. The portion of such costs determined by the Chief of Engi-

neers to be allocable to operation and maintenance of Canyon Dam and Reservoir shall be deposited to the credit of the appropriation available for maintenance and operation of such dam and used by the Chief of Engineers for such operation and maintenance; the $1,-400,000 to be contributed during the construction period shall be deposited to the credit of the appropriation available for construction of the dam and used by the Chief of Engineers for that purpose; and the balance of such costs determined by the Chief of Engineers to be allocable to construction of Canyon Dam and Reservoir shall be deposited in the Treasury of the United States.

\* \* \* \* \* \*

"The Chief of Engineers shall enter into an agreement with local interests providing for the payments heretofore described and for all other matters relating to the operation and maintenance of the Canyon Dam and Reservoir which require the cooperation of local interests. Such agreement may provide for utilization of the water impounded for water conservation and stream-flow regulation for development of electric power; except that the agreement shall provide that the utilization of water for power development shall not be allowed to conflict with the flood-control and sedimentation purposes of the Canyon Dam and Reservoir."

The Act referred to in the first quote, supra, provided that the work should be prosecuted under the direction of "Secretary of War and supervision of the Chief of Engineers." It also declared it to be the policy of the Congress "to recognize the interests and rights of the States in determining the development of the watersheds within their borders" and likewise "their interests and rights in water utilization and control." The Act postponed appropriations for and the construction of projects until

six months after "termination of the present wars" unless recommended as a defense agency and approved by the President, etc. In connection with the "Canyon Reservoir project" it refers to House Document 247, 76th Congress.

The 85th Congress enacted what is known as the Water Supply Act of 1958, U.S.Code Congressional and Administrative News, Vol. 1, 1958, p. 349, 43 U.S.C.A. § 390b. Sections 301(a) and 301(d) of that Act provide:

"Sec. 301.  (a) It is hereby declared to be the policy of the Congress to recognize the primary responsibilities of the States and local interests in developing water supplies for domestic, municipal, industrial, and other purposes and that the Federal Government should participate and cooperate with States and local interests in developing such water supplies in connection with the construction, maintenance, and operation of Federal navigation, flood control, irrigation, or multiple purpose projects.

\* \* \* \* \* \*

"(d) Modification of a reservoir project heretofore authorized, surveyed, planned, or constructed to include storage as provided in subsection (b), which would seriously affect the purposes for which the project was authorized, surveyed, planned, or constructed, or which would involve major structural or operational changes shall be made only upon the approval of Congress as now provided by law."

We quote from section (b) in part:

"(b) In carrying out the policy set forth in this section, it is hereby provided that storage may be included in any reservoir project surveyed, planned, constructed or to be planned, surveyed and/or constructed by the Corps of Engineers or the Bureau of Reclamation to impound water for present or anticipated future demand

or. need for municipal or industrial water, and the reasonable value thereof may be taken into account in estimating the economic value of the entire project: *Provided,* That before construction or modification of any project including water supply provisions is initiated, State or local interests shall agree to pay for the cost of such provisions on the basis that all authorized purposes served by the project shall share equitably in the benefits of multiple purpose construction as determined by the Secretary of the Army or the Secretary of the Interior as the case may be * * *."

Section 301(c) provides that the provisions of Section 301 shall not be construed to modify named sections of prior acts.

There is no controversy as between the parties here as to the authority of the Board to grant permits for the appropriation and diversion of the water in question. Both are asserting that right and each is disputing the right of the other to a permit from the Board authorizing such appropriation and diversion. The Federal laws recognize the right of the State in this respect, which right of the State is here exercised through the Board. The contract between the United States and GBRA, supra, acknowledges this right. It provides that GBRA shall have the right to utilize storage space in the reservoir "and make such diversions as granted to the Authority by the Board of Water Engineers for the State of Texas." It provides that such storage shall be utilized in a manner consistent "with Federal and State Laws" and excludes "the regulation of the use of the water" from the contract by declaring that it shall not be a part thereof. It also provides that the Government will not become a party to any controversy between "users of the aforesaid storage space." Provision for default is made by Art. 6:

"*Default.*—In the event that the Authority refuses or fails to comply with any and/or all of the terms of this contract, including the foregoing provisions with respect to payments, the Government reserves the right to terminate this contract."

From the foregoing it is clear that the design and construction of the dam and the resulting capacity of the reservoir is under the exclusive control and supervision of the United States and that the use, regulation and diversion of water available from the provided storage space in the reservoir is under the direction and regulation of the Board.

The contract with GBRA was made subsequent to the City's appeal from the Board's orders. It does not purport to regulate the use of the water but plainly excepts that from the contract. The contract simply provides that for the recited consideration the "Government will provide the authority storage space in the project as provided in Article 1" —between elevations 800 and 909 feet above mean sea level "to impound water in the project and make such diversions as granted to the Authority by the Board * * *" Under the terms of the contract the regulation of the use of the water and its diversion from the reservoir is made to depend on the grant of authority by the Board and at the time the contract was entered into the question of such grant of authority was pending before the court by the City's appeals from the Board's orders. This for the reason that the contract must be limited to its own provisions and at the time of the appeals there was no contract for the use and diversion of the water in question.

It is our opinion that the contract does not render moot the City's appeal.

Without undertaking a résumé of all the rules of the Board suffice it to say that such rules provide that all applications must be accompanied by detailed descriptions of the project, dam and reservoir and by maps and drawings and other information. Here the complaint is that the description of the dam and reservoir was of a project larger than

the one finally approved and that the City applied for more water than is now available for appropriation.

As we understand the question presented to us as well as the arguments of all parties, the City applied to the Board for the right to use water from a reservoir to be created by the Federal Government—that is the Canyon Dam and Reservoir. The City's application makes this clear. Then the project was not one to be constructed by the City and neither it nor the Board had the authority to control the design or the construction of the project. This authority was vested in the United States Army Engineers subject to approval by the Congress. The authority of the Board is limited to the regulation and use of water committed to its jurisdiction by the United States. If upon examination of the application and the maps, drawings, etc. accompanying it the Board is of the opinion that the same do not comply with the law and the regulations of the Board it is given the authority to require amendments. Art. 7504, Vernon's Ann.Civ.St. If it be said that Art. 7472e, Vernon's Ann.Civ.St., requires the Board's approval of the project then it must also be said that the Board has approved the project on which construction has begun and thereby it has acquired knowledge of the design and size of the same. Again if the City's application does not comply with the project as approved amendments would be proper. Art. 7504, supra. In any event the question for decision by the Board was the use and diversion of water to be stored by another authority and not the design and construction of the project. If it deemed an amendment of the application necessary it was authorized by the statute supra to require it.

We have examined the rules of the Board and we have found nothing in such rules to prevent it from granting a permit for less water than applied for. As applicable here we quote from Southern Canal Co. v. State Board of Water Engineers, Tex., 318 S.W.2d 619, 626.

"We do not know the rule, custom or practice of the Board with respect to the granting of permits for less water than the total amount applied for. Presumably, an application for a permit to take more water than was available or an amount which was detrimental to the public welfare would not prevent the Board from granting a permit for an amount which was available and which was not detrimental to the public welfare. * * *"

This theory was applied to the City's application by at least the dissenting member of the Board as noted supra. In fact the majority of the Board granted GBRA's application for less water than the total applied for.

At the time the Board acted there was water available for its action. The City's application to appropriate water was sufficient to invoke the jurisdiction of the Board to act. Evidently by its denial of the application the Board so construed it.

In our opinion the reasons we have already stated are sufficient to show that the beginning of construction of a dam smaller than the proposed dam described in the City's application does not render moot the City's cause of action. This for the reason that the question presented is not the construction of said dam but the Board's regulation of water stored in the reservoir and plainly committed to the Board's jurisdiction.

We are not in accord with appellees' view and argument that to grant the City's application would require material structural changes of the project which would require the approval of Congress and render moot the City's cause of action, supra. We have stated reasons supporting this conclusion. Moreover we cannot say as a matter of law that such approval would not and could not be obtained.

The City alleged and here says that it has established a prior right to the water in question. Appellees dispute this. We

think the question is not before us on this appeal. However, we cannot say as a matter of law that such right does not exist. Board of Water Engineers of State of Texas v. City of San Antonio, supra. There the Court considering the filing of the City's presentation said [283 S.W.2d 723]:

> "In the latter connection, art. 7496, Vernon's Tex.Civ.Stats.Ann., provides, generally speaking, for an application or 'presentation' to the Board by 'any person who desires to investigate the feasibility of any water appropriation or use of water' in certain large quantities, upon approval and filing of which by the Board, the study may be made and a priority for the corresponding work and water appropriation established as of the filing date, subject to specified conditions as to beginning and completion of the work. * * *"

The court further said that the City "insists on its application being approved and filed despite the statute,[1] on which the Board relies, and asserts valuable rights of a property nature to be effective or ineffective depending upon such approval and filing." In addition see: Board of Water Engineers v. Briscoe, Tex.Civ.App., 35 S. W.2d 804, er. dism.; 93 C.J.S. Waters § 173d, p. 921.

We sustain the City's points two and three which are to the effect that the trial court erred in dismissing its cause for the several reasons above discussed. This renders not necessary a discussion of the City's first point relating to the refusal of its motion for leave to amend. This question will likely not arise again on similar conditions.

The judgment of the trial court is reversed and the cause is remanded for trial on the merits of the City's appeal.

On Appellees' Motions for Rehearing

In their motions for rehearing appellees say we were in error in saying that "the contract with GBRA was made subsequent to the City's appeal from the Board's orders." We acknowledge that the above was not an accurate statement. We correct the statement and now say that the contract was made subsequent to the Board's order denying the City's appropriation and therefore it was made while the right of the City to prosecute its appeal from the Board's order was pending.

Appellees also say that our statement that:

> "The authority of the Board is limited to the regulation and use of water committed to its jurisdiction by the United States * * *"

is contrary to Art. 7467, Vernon's Ann.Civ. St.

We are not here concerned with "The water of the ordinary flow and underflow and tides of," flowing rivers or lakes etc. but rather our consideration is limited to the diversion, regulation and use of water authorized to be stored in the Canyon Dam Reservoir and which is committed to regulation by the Board. It is this water and only this water and its use as authorized by the Board that is in dispute between the parties.

Our opinion is corrected as above stated. To this extent appellees' motions for rehearing are granted and in all other respects they are overruled.

Motions granted in part and in part overruled.

---

1. Sec. 1-a of Art. 1434a, Vernon's Ann.Civ.St., alleged to be unconstitutional.