E. R. ARNOLD et al., Appellants,

v.

STATE of Texas et al., Appellees.

No. 4244.

Court of Civil Appeals of Texas.

Waco.

Sept. 17, 1964.

Rehearing Denied Oct. 10, 1964.

Allen Melton, Dallas, Jones, Boyd, Westbrook & Lovelace, Waco, for appellants.

W. C. Haley, Waco, for appellees.

WILSON, Justice.

The landowners appeal from judgment in a condemnation case which allowed them damages for the taking of 6.63 acres from their 35-acre tract. All but four of their 31 points complain of exclusion of evidence. In disregard of Rule 418(c), Texas Rules of Civil Procedure, as to most of these points appellants leave us to delve through the voluminous Statement of Facts, without record references or specification of the excluded evidence referred to, to examine all which was excluded. In conformity to Rule 422 we have done so, and we overrule all the points.

■ The first series of points challenges exclusion of a sand and gravel lease contract. Appellants Arnold and McGinty bought the 35 acres in 1960, each paying one-half the purchase price. The following year these proceedings were instituted, but in the interim Arnold and McGinty as lessors executed the lease on the entire acreage, naming Arnold lessee, and specifying the royalty to be paid by Arnold to himself and McGinty on material extracted. At the beginning of the trial the court was informed by Arnold that he and McGinty had entered into an agreement as to how the proceeds of the condemnation would be shared. Appellants say the lease was important in determining the value of the leasehold interest of Arnold because "both the lessor and lessee are entitled to share in the award under condemnation according to their respective interests". Without the lease, it is urged, the jury could not determine the amount of lessee's compensation.

The issue on which this evidence is now claimed to be material is apportionment. That issue concerned appellants as between themselves. They had settled it by agreement. The matter then no longer presented a justiciable controversy which the court had jurisdiction to determine. See Board of Water Engineers v. City of San Antonio, 155 Tex. 111, 283 S.W.2d 722. The contention does not reflect ground for reversal. For the same reasons appellants' contentions concerning refusal of requested issues are overruled.

■ A group of 20 points relates to exclusion of evidence offered pertaining to the value of sand and gravel deposits in the land taken and remaining, the prices being paid for such material after processing, the cost of its extraction, processing and delivery, and the income derived from the operation of the sand and gravel business. Evidence relating to all of these matters was actually admitted without objection. The statement and argument under many of these points concern excluded testimony of witnesses not referred to in the points or supporting assignments. We have tediously sifted the record to ascertain that which

is the subject of complaint by both the motion for new trial and the brief. In effect, appellants argue that the court improperly excluded evidence affecting determination of the value of the deposits of sand and gravel remaining on the land, apart from the market value of the realty itself, which would have established a basis for multiplying the quantity of material by a net unit profit per cubic yard based on past operations, operating costs, and the market price of processed sand and gravel.

Concerning quarry cases it is said in Orgel, Valuation Under Eminent Domain, 2d ed., Sec. 165, p. 674: "A fortiori, it is error to consider testimony based on assumptions as to annual productivity over a long period of years, fixed future costs of production and sale prices of the quarry product." Quoting holdings that such formula is so uncertain and speculative as to be useless, the text continues: "But more often the owner contends that the proper way to arrive at the market value of the property is to estimate the amount of stone in situ and to multiply this amount by a fixed price per unit. This method is uniformly rejected." Stating that fluctuations in the labor market, consumer demand, supply and other economic factors make such evidence too conjectural, the rule is summarized in 4 Nichols, Eminent Domain, 3d ed., Sec. 13.22(2), p. 248: "In applying the valuation process to mineral deposits in place it has been held improper to determine the value thereof by using the product of the estimated amount of the deposit and a fixed price per unit." Since the contingencies of costs and profits are uncertain, it is said in 156 A.L.R. 1423, "It is a general rule that in ascertaining the amount of compensation to be awarded for taking property containing mineral deposits in eminent domain, the amount of the mineral deposits cannot be estimated and then be multiplied by a fixed price per unit." There are decisions to the contrary representing a minority view.

It is not necessary for us to express an opinion on whether such evidence should be uniformly or generally excluded. Its exclusion is not reversible error in this case because appellants were permitted to show by extensive evidence every element or factor which would support arithmetical conclusions which the court struck. They introduced evidence showing the estimated material content per acre, the grade and quality of that material, the marketability of and demand for processed and pit-run gravel and its derivatives, the usual royalty rates in the county, unit prices of gravel, sand, aggregate and collateral materials, appellants' past production records, the quantity and quality of cushion sand per surface acre adjacent to the land taken, the daily production capacity, the area of gravel in the tract taken, costs and profits. Appellant testified without objection to his plans before condemnation for operating the gravel source, his proposed production methods, interference by the taking with these plans and methods, the location of depleted areas in relation to the tract taken and the highest and best use for the land.

■ The specific testimony of appellant as a witness which the court struck may be summarized as follows: appellant testified without objection to numerous figures in answer to his counsel's questions as to value of gravel-bearing land taken and the value "insofar as gravel content is concerned" totaling over $88,000. His testimony was then admitted as to additional amounts of over $22,000 as constituting value of two smaller of these tracts "to the landowner". He was then asked the value "to the landowner" of the 6.63 acres taken, and objection was sustained. On the bill of exception appellant testified, "I don't have that." He was then asked to testify to the value of the 6.63 acres taken as severed land. He answered "I am confused. I can't give you it"; and counsel said, "I have perfected my bill, judge." Later appellant testified to amounts of several hundred thousand dollars as being the value of the 6.63 acres. He admitted these were "my auditor's figures" and "I am a little bit confused." No reversible error is reflected in striking the latter testimony.

**296**

■ Appellants' complaints of the striking of the testimony of the witness LeBlond do not show reversible error. We assume from the points as presented they refer to striking of opinion testimony as to specific value figures as being based upon an improper valuation method. The court did not strike testimony of this witness comprising 108 pages of the Statement of Facts which gave to the jury the same evidence in a different form. The striking of some of the testimony of this witness was obviously erroneous, but the error was not reversible in view of the great volume of his testimony repetitiously elicited by both parties which. afforded the jury substantially the same components of the witness's opinion.

We have considered all appellants' points and all are overruled. Affirmed.