Neil Chur, Neil Chur, Jr., et al. v. Estella Haynes Myles, et al.















IN THE
TENTH COURT OF APPEALS
 

No. 10-00-120-CV

     NEIL CHUR, NEIL CHUR, JR.,
     MARNI CHUR AND 
     THE PARK ASSOCIATES, INC.,
                                                                              Appellants
     v.

     ESTELLA HAYNES MYLES,
     L.C. HAYNES AND LEANNA ALEXANDER, 
     INDIVIDUALLY AND AS 
     REPRESENTATIVES OF THE ESTATE OF
     MALINDA HAYNES, DECEASED,
                                                                              Appellees
 

From the 82nd District Court
Robertson County, Texas
Trial Court # 99-09-15,824-CV
                                                                                                                

MEMORANDUM OPINION
                                                                                                                

      On March 6, 2001, the parties filed an agreed motion to dismiss this appeal. In relevant
portion, Rule 42.1 of the Texas Rules of Appellate Procedure provides:
(a) The appellate court may dispose of an appeal as follows:
(1) in accordance with an agreement signed by all parties or their attorneys and
filed with the clerk; or
(2) in accordance with a motion of appellant to dismiss the appeal or affirm the
appealed judgment or order; but no party may be prevented from seeking any
relief to which it would otherwise be entitled. 
Tex. R. App. P. 42.1.
      The motion states that the parties have settled their dispute, executed appropriate releases and
submitted dismissal papers to the court below for dismissal of the underlying case. The parties
request that the appeal be dismissed with each party bearing its own costs. It is signed by the
attorneys for both parties.
      Therefore, this cause is dismissed. Costs are taxed against the party incurring them in
accordance with the agreement of the parties. 
                                                                               PER CURIAM

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Appeal dismissed
Opinion delivered and filed March 21, 2001
Do not publish



the city's motion and denied
Appellants' motion. In two points of error, Appellants contend that the court erred in doing so.
THE CHARTER AND THE ORDINANCE
      In 1978, the voters of Corsicana adopted three amendments to the city charter concerning
recall, initiative, and referendum.


 Each amendment directed the city commission to adopt
"measures as are reasonable and necessary" to carry out the new charter provision. The
commission adopted Ordinance No. 1162 to provide the procedural framework necessary to
implement all three provisions. 
      The portion of Ordinance 1162 that implements the initiative and referendum provisions is
unambiguous. Both the initiative and referendum procedures require petitions containing
signatures "equal in number to at least 25 percent of the total number of qualified voters registered
to vote at the last regular city election." The portion of Ordinance 1162 that implements the recall
provision is equally unambiguous. It states that a petition for recall must have signatures "equal
in number to at least 25 percent of the number of votes cast at the last regular municipal election
of the city" in the case of an official elected city-wide and "equal in number to at least 25 percent
of the number of votes cast at the last regular election held in such precinct" in the case of a
precinct official.
      The applicable provision of the city charter is somewhat less clear. Each amendment provided
for a petition process requiring "twenty-five percent (25%) of the number of registered voters at
the last city general election." Thus, each amendment could be read to require that petitions
contain signatures equal to or greater than twenty-five percent of the number who actually voted
or of the number of voters who were registered in the city (or precinct) on the date of the last
general election. If the former interpretation is given, the ordinance provision concerning recall
is consistent with the charter; if the latter interpretation prevails, the ordinance is in conflict with
the charter.
STANDING
      Appellants complain here, and complained in the trial court, that the city and its officials have
no "standing" to assert that its ordinance is invalid. Standing is a party's justiciable interest in the
suit and is a jurisdictional matter that may not be waived. Texas Ass'n of Business v. Texas Air
Control Bd., 852 S.W.2d 440, 445-46 (Tex. 1993). The general test for standing "requires that
there `(a) shall be a real controversy between the parties [e.g., a justiciable controversy], which
(b) will be actually determined by the judicial declaration [or relief] sought.'" Id. at 446 (quoting
Board of Water Eng'rs v. City of San Antonio, 155 Tex. 111, 283 S.W.2d 722, 724 (1955)). Here
there is a real controversy about the effect of Ordinance 1162, one that can be judicially
determined. Thus, we hold that the city and its officials have standing.
STANDARD OF REVIEW
      Appellants complain both of the granting of the city's motion for summary judgment and of
the denial of their motion. Usually, the denial of a motion for summary judgment is not
appealable. Wright v. Wright, 154 Tex. 138, 274 S.W.2d 670, 674 (1955). However, when two
opposing parties each file a motion for summary judgment and an appeal results, the appellate
court can "determine all questions presented, and may reverse the trial court judgment and render
such judgment as the trial court should have rendered, including rendering judgment for the other
movant." Jones v. Strauss, 745 S.W.2d 898, 900 (Tex. 1988); see also Tobin v. Garcia, 159 Tex.
58, 316 S.W.2d 396, 400 (1958); Orix Credit Alliance, Inc. v. Omnibank, N.A., 858 S.W.2d 586,
589 (Tex.App.—Houston [14th Dist.] 1993, writ dism'd w.o.j.) (affirming grant of summary
judgment after competing motions filed).
      In reviewing the summary judgment record before us, it is our duty to apply the following
rules: The movant has the burden of showing that no genuine issue of material fact exists and that
it is entitled to the summary judgment as a matter of law; the reviewing court must accept all
evidence favorable to the non-movant as true; every reasonable inference must be indulged in
favor of the non-movant and all doubts resolved in its favor. See Nixon v. Mr. Property
Management Co., 690 S.W.2d 546, 548 (Tex. 1985). We may not consider evidence favorable
to the movant's position unless it is uncontroverted. See Great American Reserve Ins. Co. v. San
Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex.1965).
RULES OF CONSTRUCTION
      City ordinances bear the same relationship to the city's charter as state statutes do to the
state's constitution—in the event of conflict, the superior prevails. City of Beaumont v. Fall, 116
Tex. 314, 291 S.W. 202, 205-06 (Tex. Comm. App. 1927, opinion adopted). The parties agree
that the same rules of construction apply. See Mills v. Brown, 159 Tex. 110, 316 S.W.2d 720,
723 (1958); Reed v. City of Waco, 223 S.W.2d 247, 254 (Tex. Civ. App.—Waco 1949, writ
ref'd). One of those rules of construction is that laws will not be held repugnant to each other if
any other reasonable construction leaving both in effect can be reached. Fall, 291 S.W. at 206. 
Following this theory, Appellants urge that there is no conflict because the charter can be
interpreted in a manner that will avoid conflict with the ordinance. Such an approach to
interpretation would, in our view, reverse the time-honored and well-established rule that superior
laws prevail over inferior laws. See Vosburg v. McCrary, 77 Tex. 568, 14 S.W. 195, 196 (1890);
Loos v. City of Houston, 375 S.W.2d 952, 956 (Tex. Civ. App.—Houston 1964, writ ref'd n.r.e.)
("The City, in passing an ordinance, is subject to the provisions of its charter.") Additionally, as
we will see, the interpretation that Appellants urge would render another provision of the
ordinance in conflict with the charter. Thus, we will interpret the applicable provision of the city
charter in light of, but apart from, the existence of the ordinance. 
      A city's charter must comply with the state constitution and statutes. Tex. Const. art. XI,
§ 5. Appellants do not complain that the charter violates either. "The power of a municipal
corporation or of a city council cannot exceed that conferred by the charter, and all ordinances
must be in subordination thereto." Vosburg, 14 S.W. at 196. Thus, our determination is based
on the charter being the organic law of the city, and in interpreting the charter, we look to the
intent of the framers. See Wilson v. Galveston County Cent. Appraisal Dist., 713 S.W.2d 98, 101
(Tex. 1986) ("In construing the Texas Constitution, it is our duty `to ascertain and give effect to
the plain intent and language of the framers of a constitutional amendment and of the people who
adopted it.'"); Gragg v. Cayuga Indep. Sch. Dist., 539 S.W.2d 861, 865-66 (Tex. 1976).
ANALYSIS
      The city's summary judgment evidence included the affidavits of H. R. Stroube, who was
serving as mayor at the time the charter was amended to include the recall provision, and R. B.
Gober, who served as a city commissioner and mayor pro tem during the same time period. Both
state that the charter provision was intended to require twenty-five percent of the number of voters
who were registered at the time of the last city general election and that the words "at the last city
general election" were intended to set a date for determining the number of registered voters. The
city also presented the affidavit of Nelda Neal, who was city secretary when the charter was
amended and when the ordinance was adopted. She states that her notes from the work sessions
of the commission included discussions of the proposed charter amendments and that the
commission initially discussed a requirement of ten percent of the registered voters to initiate a
recall but changed the requirement to twenty-five percent. She states that it was always the intent
of the commission that the number of registered voters, rather than the number of actual voters,
be the basis for the percentage required for a recall petition. She further states that the language
of the ordinance concerning recall petitions is "simply an error by the drafter of the ordinance."
      Appellants presented no summary judgment evidence of a contrary intent. Instead, they point
to the adoption of Ordinance 1162 and say that, because Stroube and Gober were on the
commission when the ordinance was adopted, the charter should be given the meaning that they
assigned to it in the ordinance. The city responds by saying that the error in drafting Ordinance
1162 is apparent because, although the three charter provision are identical, the provision of the
ordinance implementing initiative and referendum requires petitions containing signatures "equal
in number to at least 25 percent of the total number of qualified voters registered to vote at the last
regular city election," while the provision implementing recall departed from the charter's
language.
      Rather than supporting Appellants' interpretation of the charter, we believe that the ordinance
supports the city's position. Ordinance 1162 uses two methods of determining the required
number of signatures on a citizen-originated petition: one based on the number of registered voters
as of a given date without respect to who has actually voted and one based on the number of
persons who actually voted at an election held earlier. The ordinance uses the former to specify
the number of signing voters required for initiative and referendum and the latter to specify the
number of signing voters required for a recall election. One or the other of the provisions
concerning petitions cannot be squared with the charter because all three of its provisions are
identical.
      The city's own interpretation of its charter provision is evidence of what the commission
thought soon after the charter was amended. Because the requirement of the ordinance adopted
by the commission concerning initiative and referendum more closely follows the language of the
charter and because the affidavits of the mayor, commissioner, and city secretary support the
notion that the framers intended to use "registered voters" rather than "actual voters" as the
benchmark in all three amendments, we conclude that the "registered voters" interpretation is the
one that the framers intended when the charter was amended. See Wilson, 713 S.W.2d at 101. 
Thus, we believe that the charter provision should be interpreted to mean "twenty-five percent
(25%) of the number of registered voters at [the date of] the last city general election."
      We hold that the court did not err when it determined that the provision of Ordinance 1162
concerning recall petitions conflicts with the city's charter. We overrule both of Appellants'
points of error and affirm the judgment of the trial court.
 
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed February 15, 1995
Do not publish