**Robert S. CALVERT, Comptroller of Public Accounts, et al., Appellants,**

v.

**AMERICAN INTERNATIONAL TELEVISION, INC., Appellee.**

No. 11976.

Court of Civil Appeals of Texas, Austin.

Feb. 21, 1973.

Crawford C. Martin, Atty. Gen., R. L. Lattimore, Asst. Atty. Gen., Austin, for appellants.

Raymond J. Termini, Tobolowsky, Schlinger & Blalock, Dallas, for appellee.

O'QUINN, Justice.

American International Television, Inc., a California corporation, brought this suit in October of 1970 seeking refund of certain sales and use taxes paid under protest to the Comptroller of Public Accounts in connection with the renting by plaintiff of picture films, cartoons and short features to television stations in Texas. In compliance with statute, American International sued as defendants the Comptroller of Public Accounts, the State Treasurer, and the Attorney General of Texas (V.A.T.S. Tax.-Gen. art. 1.05(2)).

Plaintiff and defendants filed motions for summary judgment. The trial court granted plaintiff's motion, awarding recovery of $3,737.34 from the State, and denied defendants' motion, in an order for summary judgment dated May 10, 1972.

The trial court made and filed findings of fact and conclusions of law. The court concluded that American International is not doing business in this state and that such transactions as the corporation has in Texas constitute interstate and not intrastate business, and that to require the company to be an agent of the State to collect taxes denies American International due process and imposes a burden on interstate commerce.

The trial court also concluded that Article 20.04(Z), Taxation-General, Title 122A, exempting motion picture theaters subject to admission taxes from the excise tax imposed on receipts from leasing of films, is an unreasonable and arbitrary classification and violates the due process clauses of both the state and federal constitutions.

The appellants, for the State, bring three points of error. We will sustain all points of error, reverse judgment of the trial court, and render judgment that appellee, plaintiff below, take nothing.

Appellee American International is a foreign corporation with offices in California and New York. The corporation is engaged in the business of renting or leasing motion picture films, serials, cartoons, and other types of films to television stations situated and operating in Texas. The films are sent to the stations and the stations store the films until used and then return them to appellee. Appellee does not hold a permit to do business in Texas, and has never advertised in newspapers of this state and does not carry listing in telephone directories issued for use in Texas.

Appellee does not maintain an office, branch, or other place of business in Texas and has no representative maintaining headquarters within this state. Appellee procures orders for the licensing of motion picture films through use of the telephone, the United States mail, and through two salesmen, neither of whom is domiciled in Texas, who travel into Texas five or six times each year to solicit and obtain orders from television stations in the state. All orders tentatively agreed upon between the salesman and the television station are subject to approval by appellee in its New York offices. When the orders are accepted, appellee's New York office directs that the films be delivered to the customers in Texas. Appellee's salesmen are not permitted to execute leasing contracts with Texas customers and are not authorized to collect any money from stations in this state for rentals or leases of films.

Article 20.03 (Title 122A, Taxation-General) imposes an excise tax " . . . on the storage, use or other consumption in this State of taxable items purchased, leased or rented from any retailer for storage, use or other consumption in this State . . ." at the same percentage rate prescribed by Article 20.02 on the sale price " . . . or in the case of leases or rentals, on said lease or rental prices."

Collection of the tax is required to be made by "Every retailer engaged in business in this State and . . . leasing or renting taxable items for storage, use, or other consumption in this State . . . at the time of making the sale . . ." (Art. 20.031(B)).

The statute defines "Retailer engaged in business in this State" as "Any retailer having any representative, agent, salesman, canvasser or solicitor operating in this State under the authority of the retailer . . . for the purpose of selling, delivering, or the taking of orders for any taxable items." (Art. 20.031(B)(2)).

Appellee contends that the trial court correctly found that the contacts, or links, between appellee and the State of Texas are "insufficient to satisfy the Due Process and Commerce Clause requirements for the State of Texas to require Appellee to act as the State's collection agent with respect to any use tax which may become due from Texas users or to insure the payment of such tax if it fails to make such collections from the tax debtors or otherwise to act as a 'retailer engaged in business in this state.' "

■ The link, or nexus, between the taxing state and the person, property, or use of property the state seeks to tax must be "some definite link, some minimum connection," to prevent the tax from being a denial of due process or a direct burden on interstate commerce. See Miller Bros. Co. v. Maryland, 347 U.S. 340, 344, 74 S.Ct. 535, 539, 98 L.Ed. 744 (1954).

The Supreme Court of the United States on numerous occasions has considered whether this essential nexus was present to prevent striking down the state tax statute. We hold that under the facts before us the tax statute neither denies due process nor directly burdens interstate commerce. General Trading Company v. State Tax Commission of the State of Iowa, 322 U.S. 335, 64 S.Ct. 1028, 88 L.Ed. 1309 (1944).

The Iowa statute in the General Trading Company case is strikingly similar to the Texas tax statute, and the facts in that case and the case at bar are without substantial or significant difference. General Trading Company, a Minnesota corporation, sent into Iowa from Minnesota the property on which the use tax was levied.

The orders for the property were always subject to acceptance in Minnesota, and shipment into Iowa was by common carrier or by mail. "The property on which the use tax was laid was sent to Iowa *as a result of orders solicited by traveling salesmen sent into Iowa from their Minnesota headquarters.*" (Emphasis added) (322 U.S. 337, 64 S.Ct. 1029).

The Iowa statute imposed the tax on every person using the taxable property, but "Every retailer maintaining a place of business" in Iowa was required to collect the tax from the purchaser. The Supreme Court of Iowa held that General Trading Company was a "retailer maintaining a place of business" in that state within the meaning of the statute, that Iowa had not exceeded its powers in imposing the tax on Iowa purchasers, and that collection could be made validly through the Trading Company. The Supreme Court of the United States approved this decision, and declared, "To make the distributor [in that case, General Trading Company] the tax collector for the State is a familiar and sanctioned device." (322 U.S. 338, 64 S.Ct. 1030)

Appellee points out that in the General Trading Company case the number of salesmen used to solicit orders was not mentioned by the Iowa court or by the Supreme Court, and argues that sending two salesmen into the taxing state does not provide a sufficient minimum contact to treat the foreign company as a "retailer engaged in business in this State," under authority of McLeod v. Dilworth Company, 322 U.S. 327, 64 S.Ct. 1023, 88 L.Ed. 1304 (1944). Mr. Justice Rutledge, who concurred in General Trading Company v. Iowa, dissented in the McLeod case, apparently because he believed the Court had decided Tennessee, the seller's state, had exclusive right to tax a sale made in Tennessee of goods to be shipped to Arkansas, and said, " . . . in my judgment, it [the case] is determined the wrong way, not on commerce clause grounds but upon an un-

sustainable application of the due process prohibition." (322 U.S. 360, 64 S.Ct. 1036)

But, in any event, the majority of the Court in *McLeod* decided that the sale took place in Tennessee and Arkansas could not thereafter tax the sale, and on that basis alone *McLeod* is distinguishable. Mr. Justice Rutledge in concurring with the majority in *General Trading Company* pointed out that regular, continuous, and persistent solicitation of business can be a process as under the Iowa statute, termed a "retailer maintaining a place of business" in the taxing state. (322 U.S. 354, 64 S. Ct. 1033)

■ We regard the number of salesmen used in solicitation of business as immaterial. It must be presumed that the retailer will use as many salesmen as it deems proper and sufficient to produce a desired volume of sales or rentals to the company's customers. That number may be one, or in this case two, or the number may be greater, depending upon what the company determines is required to maintain effective solicitation of business. The trial court found that appellee "has authorized salesmen to travel into the State for the purpose of discussing business with potential Texas customers (television stations). Since 1964 Plaintiff [appellee] has had five salesmen travel into the State of Texas; Plaintiff has never had more than two salesmen travel into the State during the same period of time."

The Texas statute provides that "any retailer having any *representative, agent, salesman, canvasser or solicitor* operating in the State . . . for the purpose of selling, delivering, *or the taking of orders* . . ." is a retailer "engaged in business in this State." We hold that Appellee American International under the uncontroverted facts was a retailer during the tax periods concerned engaged in business in this state and, having failed as required by statute to collect the excise taxes levied on the leases of its films to television stations in Texas, became liable to the State for payment of the taxes.

■ Appellee contends in effect that the tax is discriminatory because of the exemption afforded theaters under Article 20.04(Z). The statute, during the tax period with which we are concerned, provided, "There are exempted from the taxes imposed by this Chapter [20] the receipts from the leasing or licensing of motion picture films of any kind to or by motion picture theatres which are subject to admission taxes as imposed by Chapter 21 . . . ."

In this contention appellee relies on the decision in Calvert v. McLemore, 163 Tex. 562, 358 S.W.2d 551 (1962), in which it was held that the place of exhibition of films was not a justifiable basis for classification of the occupations of the exhibitors. Appellee argues that television stations and theaters are engaged in the same occupations, that of exhibiting films for entertainment of the public, and that the Legislature seized upon the difference in place of exhibition as the basis for classification under the exemption found in Article 20.04(Z).

We have no difficulty in perceiving a number of substantial and significant differences between a television station and a motion picture theater which constitute a reasonable basis for classification of the two occupations in separate categories for purposes of the tax statute. The theater is engaged in the occupation of entertainment only and derives its revenues entirely from customers who pay to enter the theater to witness the exhibition of motion picture films. An admissions tax is levied on receipts derived from theater customers. The television station is a news and advertising medium, deriving its revenues from the sale of advertisements to manufacturers, merchants, candidates for public office and other persons or firms desiring to reach the public with their particular messages. The exhibition of motion picture

films is incidental only to the main occupation of the station and is a means employed to attract and hold an audience in order that the viewers will hear the advertisers' messages. Motion picture films shown on television are preceded, interrupted, and followed by paid advertisements, which the audience must also view while witnessing the motion picture. An epitome of this practice is found in the remark of George Gobel, a noted entertainer, interrupting his television program to say, "We are now about to have a commercial, and anybody who leaves the room is a dirty name."

 The two occupations are not the same, even though both the theater and the television station show motion picture films, the former as its sole occupation, the latter incidental to its principal business of news medium and exhibitor of commercial and other kinds of advertising. The classification made by the Legislature and the imposition of varying burdens upon the different groups are largely within the discretion of the Legislature. The courts will not strike down the statute where there is a real difference to justify the separate treatment undertaken by the Legislature. Calvert v. McLemore, *supra*; Texas Co. v. Stephens, 100 Tex. 628, 103 S.W. 481 (1907); Dancetown, U.S.A. Inc. v. State, 439 S.W.2d 333 (Tex.Sup.1969).

As stated earlier, both plaintiff and the State moved for summary judgment in the trial court. When both parties file motions for summary judgment and the trial court grants one motion and denies the other, the court of civil appeals should determine all questions presented, and if error is found requiring reversal, the appellate court will render the judgment which the trial court should have rendered. Tobin v. Garcia, 159 Tex. 58, 316 S.W.2d 396 (1958); State v. Rope, 419 S.W.2d 890, 899 (Tex.Civ.App., Austin 1967, writ ref. n.r.e.).

We reverse the judgment of the trial court denying motion of appellants in be-

half of the State for summary judgment and granting motion of appellee for summary judgment and awarding recovery of taxes paid under protest. We render judgment that appellee's motion be denied in all things and that appellee take nothing; we also render judgment that appellants' motion in behalf of the State in all things be granted.

Judgment of the trial court reversed and rendered.

Reversed and rendered.