MAJESTIC INDUSTRIES, INC., et al., Appellants,

v.

J. W. ST. CLAIR, Commissioner of the Texas Department of Labor and Standards, Appellee.

No. 12391.

Court of Civil Appeals of Texas, Austin.

April 28, 1976.

Rehearing Denied May 19, 1976.

William L. Ehrle, Rogers, Ehrle & Hughes, Mary Joe Carroll, Clark, Thomas, Winters & Shapiro, Austin, for appellants.

John L. Hill, Atty. Gen. of Tex., David M. Kendall, First Asst. Atty. Gen., and Robert Giddings, Asst. Atty. Gen., Austin, for appellee.

O'QUINN, Justice.

Appellants brought this suit in district court of Travis County on August 29, 1975, seeking to enjoin the Commissioner of the Department of Labor and Standards of Texas from enforcing certain provisions of the Texas Mobile Homes Standards Act and for declaratory judgment adjudging certain provisions of the Act unconstitutional.[1]

After hearing on temporary injunction, the trial court entered an order on September 12, 1975, denying the injunction, from which plaintiffs below have appealed, bringing four points of error. We will overrule the points and affirm judgment of the trial court.

The three statutory provisions attacked by appellants are contained in the Texas Mobile Homes Standards Act as passed by the Legislature in 1975. The basic Act, known then as "Uniform Standards Code for Mobile Homes," was passed by the Legislature in 1969 (Acts 1969, 61st Leg., p. 1954, ch. 656), and subsequently was amended in 1971 and in 1973 (Acts 1971, 62nd Leg., p. 2765, ch. 896; Acts 1973, 63rd Leg., p. 1673, ch. 606). The entire Act, as so amended, underwent a complete revision and reenactment in 1975, and as revised the Act became effective on September 1, 1975 (Acts 1975, 64th Leg., p. 2036, ch. 674; Art. 5221f, Vernon's Ann.Civ.Sts.), redesignated "Texas Mobile Homes Standards Act."

The sections under attack are Sections 13, 14, and 17(d), the first requiring manufacturers, dealers, and salesmen to file performance bonds, the second requiring manufacturers and dealers to provide specified warranties on all new mobile homes, and the last section providing: "Any contract between a consumer and a mobile home salesperson, dealer, or manufacturer is voidable at the option of the consumer if said manufacturer, dealer, or salesperson was not bonded as per the provisions of this Act at the time the contract was consummated."

Appellants' attack, embraced in the several points of error, is grounded on the claim that the caption of the bill as passed by the Legislature did not meet the requirements of notice insured by Article III, section 35, of the Constitution of Texas, and on the additional claims that in various aspects the Act violates certain guaranties of protection accorded by both the State Constitution and the Constitution of the United States.

Appellants concede that "the granting of a temporary injunction is ordinarily within the discretion of the trial court." Since the trial court explicitly denied injunctive relief upon the basis of holdings that the provisions of the Act in question are not unconstitutional, as contended in this suit, appel-

---

1. Plaintiffs below, now appellants, are six corporations and four individuals engaged in phases of the mobile homes industry in Texas: Majestic Industries, Inc., Tally-Ho Mobile Homes, Inc., Skidmore-Carter Corp., Caravan Mobile Homes, Inc., Harold C. Kemp, Jerry Thomas, Doug Bennett, and Ted Balter. Defendant below, now appellee, is J. W. St. Clair, Commissioner of the Department of Labor and Standards.

lants urge that in effect the trial court decided the case on the merits and that "Erroneous conclusions of law are not within the discretion of the trial court."

We turn first, however, to consideration of a jurisdictional question raised by the attorney general in behalf of appellee. The Commissioner of the Department of Labor and Standards urged by motion and argument in the trial court, and contends on appeal, that the courts "lack jurisdiction of this suit." Four grounds are advanced in support of this contention.

The grounds are (1) that this is a suit against the State and may not be maintained without prior consent of the State; (2) that appellants in bringing suit for declaratory judgment failed to plead existence of a justiciable controversy involving an amount expressly pleaded in excess of $500; (3) that by delaying the filing of suit until three days before effective date of the Act, appellants slept on their rights and came to court with unclean hands; and (4) that necessary parties were not joined and are not before the Court because appellants failed to make parties "the consumers of the State of Texas," to whom the statute accords certain benefits, as well as all county and district attorneys of the state and the attorney general's department.

We have examined the basis for appellee's attack on jurisdiction of the court, which we will briefly review, and will overrule the contention before proceeding to the merits of the case.

It was established at the trial that appellants are manufacturers or dealers engaged in pursuing these occupations in the mobile homes industry affected by the statute. The trial court found and appellee conceded that a showing of probable injury had been made by appellants, who by this suit attack the Act as unconstitutional and one jeopardizing their right to earn a livelihood.

The Supreme Court in 1958, in a suit challenging validity of the Texas "Bail Bond Law," declared, "That a right to earn a living is a property right within the meaning of our Constitution was early established by the United States Supreme

Court in the Slaughter House cases, 16 Wall. 36, 21 L.Ed. 394, and a person cannot be deprived of it by simple mandate of the legislature." *Smith v. Decker*, 158 Tex. 416, 312 S.W.2d 632, 633 (1958).

In an earlier action brought, as in this case, for declaratory judgment and injunctive relief in testing constitutionality of a statute, this Court held that the cause was not a "suit against the state" requiring that legislative consent be first obtained. *American Federation of Labor v. Mann*, 188 S.W.2d 276 (Tex.Civ.App. Austin 1945, no writ). It is recognized as a general rule that even when the State has an interest in the vindication of its laws, " . . . unless the property or contract rights of the State, or its rights to collect taxes levied by such law, be foreclosed by the judgment, the suit is not forbidden." *Mann, supra,* 188 S.W.2d 279.

When, as in this case, the State acting through one of its principal branches of government, has issued a legislative mandate which may affect fundamental rights protected by the Constitution, the courts would invoke a strange brand of justice to deny citizens directly and vitally concerned, by reason of the mandate provisions, the right to seek equitable relief and a declaration respecting such rights, on the ground that the State itself, again acting through the same body that fashioned the mandate, had not elected to waive immunity from suit. It is not a function of the legislature, by giving or withholding its consent, to determine whether the mandate does or does not conform to the Constitution. That function rests solely with the courts.

Appellee's contention that appellants failed to plead facts sufficient to establish jurisdiction under the Declaratory Judgments Act is also without merit. We hold that appellants' pleadings under the Act are clear in showing a justiciable controversy and an amount involved far in excess of $500. The Supreme Court more than thirty years ago approved the basic principle " . .. . that the action for

declaratory judgment 'is an instrumentality to be wielded in the interest of preventative justice and its scope should be kept wide and liberal, and should not be hedged about by technicalities.'" *Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709, 713 (1945).

Appellee's third and fourth grounds upon which jurisdiction is attacked are likewise without merit to support the contention. Appellee urges that "Appellants are asking for an advisory legal opinion as to anticipated controversies that have not yet arisen and, in fact, may never arise," and in the same argument inconsistently castigates appellants as among "those who slumber on their rights" in bringing a tardy action for equitable relief. The argument is not persuasive and presents no cogent reason to refuse jurisdiction. The final ground, that the consumers of Texas and all county and district attorneys of the state are indispensable parties, presents no reason to refuse jurisdiction. We are not aware of any requirement that every person who might be injured by the Act, or have an official interest in local enforcement, should be made a party plaintiff. This Court rejected a similar contention in *Texas Liquor Control Board v. Diners' Club, Inc.*, 347 S.W.2d 763, 767 (Tex.Civ.App. Austin 1961, writ ref. n. r. e.).

The trial court properly overruled appellee's motion to dismiss the action on the ground that the court was without jurisdiction, and we affirm that action.

Returning to the merits of the appeal, we consider appellants' first point under which the contention is made that the caption of the Act failed to meet the standard fixed by the Constitution, Article III, section 35. The portion of section 35 under examination provides: "No bill, (except general appropriation bills . . .) shall contain more than one subject, which shall be expressed in its title." This provision is mandatory upon the Legislature, and in this or similar form has been placed in every constitution of this state beginning in 1845. Constitutions prior to 1876 used the word "object" in the same connection in which the word "subject" is used in section 35.

The Supreme Court has said that the word subject " . . . perhaps expresses more accurately the meaning and intent of the constitutional provision." *Day Land and Cattle Co. v. State*, 68 Tex. 526, 4 S.W. 865, 872 (1887). In *Day Land and Cattle* the Supreme Court stated, "A title or act essentially single in subject, which does not thus conceal or disguise the real purpose, is not subject to constitutional objection, although the ends intended to be reached through the one subject may be many." 4 S.W. 872.

Here we are concerned with an amendatory Act passed by the Legislature in 1975, amending an earlier Act passed in 1969, both dealing with standards for mobile homes in Texas. Of an amendatory Act, the Supreme Court in 1968 stated, "There is no constitutional requirement that the caption of an amendatory act set out exactly what changes were made in the amended act, *Shannon v. Rogers*, supra, [159 Tex. 29, 314 S.W.2d 810 (1958)] so long as the subject of the amendatory act is not 'remote' from the subject of the original act, as in *Board of Water Engineers v. City of San Antonio*, 155 Tex. 111, 283 S.W.2d 722 (1955)." *Smith v. Davis*, 426 S.W.2d 827, 833 (Tex.Sup.1968). Further, the Supreme Court held, "It is not necessary that the caption of an amendatory bill apprise the reader of the precise effects of the body of the bill, so long as the general subject of the amending bill is disclosed," and invited comparison of the Court's decisions in *Shannon* and *Board of Water Engineers, supra*.

Comparison discloses that the basic difference between the decisions in *Shannon* and in *Board of Water Engineers* is that in the former the caption of the amendatory Act disclosed the general subject of the amending bill and the subject was not "remote" from that of the original Act, whereas in the latter case the caption of the amendatory Act failed to reveal that the agencies authorized by the original Act to furnish water for municipalities were, for the first time, by the amendment prohibited from diverting water from the watersheds of two specified public streams. Because the added subject was not germane to the

subject of the original Act and had not been announced in the caption, the amendatory Act in the latter case was held invalid under section 35 of Article III.

Appellants place reliance on the holdings in *Board of Water Engineers, supra,* and other cases involving amendatory Acts to demonstrate the fatal defects of the Act under review in this case. We have examined the cases on which appellants rely and have concluded that each of the Acts may be properly distinguished from the present Act. In *Board of Water Engineers,* as noted, the denial of rights in certain public streams, introduced in the amendatory Act, was not germane to the original Act which dealt with general powers of corporations supplying water for domestic use without making any reference to rivers, streams, watercourses, watersheds, dams or lakes. (283 S.W.2d 725, col. 2)

■ The caption of the amendatory Act in this case stated: "An Act revising the Texas Mobile Home Standards Act, Chapter 656, Acts of the 61st Legislature, Regular Session, 1969, as amended (Article 5221f, Vernon's Texas Civil Statutes); defining certain offenses and prescribing civil and criminal penalties; and declaring an emergency."

Appellants' position is that the caption is defective because it failed to refer to bonds and warranties prescribed by the amendatory Act. The caption did announce that the prior Act concerning mobile homes standards was the subject of revision by the amendatory Act, and that the amendment would define offenses and prescribe penalties. The standards of the original Act were regulatory in nature, as were the provisions found in the amendatory Act dealing with requirements for bonds and giving of warranties, matters clearly germane to the original subject of regulation of a single industry in Texas. The caption specifically named and identified the statute being amended, and the amendments were germane to the subject matter of the original Act. *Bryant v. State,* 457 S.W.2d 72, 76 (Tex.Civ.App. Eastland 1970, writ ref. n. r. e.); *Shannon v. Rogers, supra.*

We hold that the caption of the amendatory Act was sufficient to meet the requirements of section 35, Article III, of the Constitution.

Under the second point of error appellants insist that the provisions of the "Texas Mobile Homes Standards Act" (Art. 5221f, V.A.C.S.), in sections 13, 14, and 17(d), "constitute an unjustifiable exercise of the police power of the State" and "are void for vagueness."

In connection with the first contention appellants rely in the main on evidence in the record that certain mobile home dealers and manufacturers experienced difficulty in securing bonds, and that in some instances bonding companies required large security deposits and individual guaranties before the companies would agree to issue the bond required by statute. The Legislature found "that mobile homes have become a primary housing resource of many of the citizens of the state . . . and a growing awareness exists that many consumers are injured by unprincipled and dishonest members of the mobile home industry, that current warranties are deficient, that existing means of remedying these injustices are inadequate and do not provide a viable means for protecting the consumer . . [and] . . . the legislature deems it necessary to expand various regulatory powers to deal with these problems." (Sec. 2 of the amendatory Act passed in 1975).

■ A state statute designed to prevent the deception of consumers of particular goods is recognized as a valid exercise of police power. *Florida Lime and Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963); *Texas Underwriters v. Martinal,* 140 S.W.2d 582 (Tex. Civ.App. El Paso 1940, no writ). Protection of the public's financial safety is also included within the state's police power. *Nebbia v. New York,* 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934). Discretion of the legislature in the exercise of police power is recognized as very broad. *Stephenson v. Binford,* 287 U.S. 251, 53 S.Ct. 181, 77 L.Ed. 288 (1932); *East New York Savings Bank v.*

*Hahn,* 326 U.S. 230, 66 S.Ct. 69, 90 L.Ed. 34 (1945).

■ The fact that some dealers and manufacturers of mobile homes were unable to make bonds, or experienced difficulty in obtaining bonds, as pointed out by appellants, may demonstrate a want of financial stability or financial security of some members of the industry, but such burdens of expense and inconvenience will not form a basis for declaring the statute invalid. *Merrick v. N. W. Halsey and Co.,* 242 U.S. 568 at 587, 37 S.Ct. 227, 231, 61 L.Ed. 498 (1917). In *Merrick* the Supreme Court recognized that the statute " . . . burdens honest business . . . but burdens it only that, under its forms, dishonest business may not be done. This manifestly cannot be accomplished by mere declaration; there must be conditions imposed and provision made for their performance. Expense may thereby be caused and inconvenience, but to arrest the power of the state by such considerations would make it impotent to discharge its functions. It costs something to be governed."

■ Under the second contention under point two appellants attack the statute for vagueness. The Legislature clearly provided that details of the administration of the Act were to be promulgated by the Texas Department of Labor and Standards. This is a proper delegation of enforcement rules recognized by the Supreme Court in *Texas Liquor Control Board v. The Attic Club, Inc.,* 457 S.W.2d 41 (Tex.Sup.1970), in which the Court also held that "A statute is fatally vague only when it exposes a potential actor to some risk or detriment without giving him fair warning of the nature of the proscribed conduct." See also *Texas Liquor Control Board v. Super Savings Stamp Company,* 303 S.W.2d 536 (Tex.Civ. App. San Antonio 1957, writ ref. n. r. e.). We hold that the sections of the statute under attack are not fatally vague. Point two is overruled.

■ Appellants, by their third point of error, urge that the statute denies equal protection because the Legislature failed to place finance companies and lending institutions, offering repossessed mobile homes for sale on "repo lots," under the bond and warranty provisions of the Act. We find no merit in this contention for the reason that the persons included within the requirements are a class engaged primarily in the industry and constitute a different class from those not "engaged in the business" of manufacturing and selling mobile homes.

■ It is clear that the Legislature intended to regulate only those "engaged in the business" of manufacturing or selling new mobile homes and did not intend to include lending institutions that, after default of the purchase money note by the buyer, may foreclose their lien and resell the mobile home incidental only to recoupment of their loss. In determining classifications, the Legislature has broad powers, and the courts will interfere only when clear showing has been made that no reasonable basis exists for the classification adopted. *American Transfer and Storage Company v. Bullock,* 525 S.W.2d 918, 924 (Tex.Civ.App. Austin 1975, writ ref.). The third point is overruled.

■ Appellants urge, under their fourth and final point, that the Act violates the "Supremacy Clause" of the Constitution of the United States. We overrule the point.

The Legislature with commendable care expressly provided in Section 5 of the Act for compliance by the state "with the federal standards" established by Act of Congress, and in case of conflict, " . . . the federal standards shall be applicable and given full force and effect." In Section 9 the Legislature directed that administration and enforcement of the Act, under rules and regulations to be promulgated, in recognition of the National Home Construction and Safety Standards Act of 1974 and for submission of the "state plan" to the secretary of the United States Department of Housing and Urban Development for approval.

The recognized test to determine whether the state statute violates the supremacy clause is to ascertain whether the chal-

lenged Act " . . . stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Perez v. Campbell*, 402 U.S. 637, at 649, 91 S.Ct. 1704 at 1711, 29 L.Ed.2d 233 (1971). We hold that the Act challenged by appellants was carefully designed to comply with federal law and not to stand as an obstacle to the purposes of Congress found in related legislation.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.