Bob BULLOCK, Comptroller of Public
Accounts, et al., Appellants,

v.

ABC INTERSTATE THEATRES, INC.,
et al., Appellees.

Bob BULLOCK, Comptroller of Public
Accounts, et al., Appellants,

v.

MARTIN THEATRES OF TEXAS,
INC., Appellees.

Nos. 12601, 12621.

Court of Civil Appeals of Texas,
Austin.

Oct. 5, 1977.

Rehearing Denied Nov. 2, 1977.

John L. Hill, Atty. Gen., Martha E. Smiley, Asst. Atty. Gen., Austin, for appellants.

James H. Keahey, Austin, for ABC Interstate Theatres, Inc.

Larry E. Temple, Austin, for Allied Artists Pictures Corp., et al.

George Garrison Potts, Claude R. Wilson, Jr., H. David Herndon, Golden, Potts, Boeckman & Wilson, Dallas, for Martin Theatres of Texas, Inc.

O'QUINN, Justice.

Appeals in two causes involving the same basic tax controversy have been consolidated in this Court for purposes of decision and disposition of the issues.

ABC Interstate Theatres, Inc., engaged in exhibiting motion picture films, brought the first lawsuit (No. 12,601) in July of 1976 to recover taxes on leases of motion picture films, paid under protest to the Comptroller of Public Accounts, for tax periods in 1975 and 1976. In compliance with statute, Interstate sued as defendants the Comptroller, the State Treasurer, and the Attorney General of Texas. (V.A.T.S. Tax.-Gen. art. 1.05(2)).

Subsequently eight motion picture distributor companies intervened, intervenors being Allied Artists Pictures Corp., Avco Embassy Pictures Corp., Columbia Pictures Industries, Inc., Paramount Pictures Corporation, Twentieth Century-Fox Film Corporation, United Artists Corporation, Universal Film Exchanges, Inc., and Warner Bros. Distributing Corporation.

The second appeal (No. 12,621) is from judgment in a suit filed in March of 1976 by more than 100 theater owners and operators, from which Martin Theatres of Texas, Inc. was severed and proceeded to judgment. Martin Theatres sought recovery of taxes paid under protest in tax periods of 1976 and 1977.

Each of the causes was tried before the district court without a jury, and the court entered judgments in both cases in January of 1977. In both cases the trial court found that the "sales and use tax as applied to the leasing or licensing of motion picture films to motion picture theatres in Texas is unconstitutional and inapplicable." The court awarded Interstate recovery of taxes in the sum of $463,748.53, and awarded Martin Theatres recovery of $53,637.54. From each of these judgments the State has appealed and brings the single point of error that the trial court erred as a matter of law

in holding the tax unconstitutional and inapplicable.

To bring the facts of this litigation into proper perspective, we review the statutory changes, the court decisions, and the rulings of the Comptroller which bear directly upon the tax levied by the State on the leasing of motion picture film to be exhibited. The Texas Limited Sales, Excise and Use Tax (Title 122A, Taxation-General, Chapter 20) includes as a taxable transaction the leasing of motion picture film, a "tangible personal property." (Arts. 20.01(J)(1)(c) and 20.03).

Article 20.01(J)(1)(c) as enacted in 1961 provided that a "Retailer" included:

"Every person who leases or rents to another tangible personal property for storage, use or other consumption, *except that persons engaged in the leasing or licensing of motion picture films* of any kind or character *to motion picture theatres, television stations* and others *shall be liable for the tax levied under the provisions of this law,* and they *shall not pass said tax along to the person or persons to whom they lease or license said motion picture films.*" (Acts 1961, 57th Leg., 1st C.S., Ch. 24, p. 71, 74). (Emphasis added).

Thus it is clear that in the renting, leasing, or licensing of motion picture films the distributor as lessor became responsible for the tax and was prohibited from passing on to, or collecting from, the exhibitor as lessee the amount of the tax. In interpreting application of the tax in such lease transactions the Comptroller issued Rule No. 11:

"Persons leasing or renting motion pictures of any kind or character to motion picture theaters, television stations, etc., shall be considered the ultimate consumer of such motion pictures. They are thus liable for the tax based upon the purchase or lease price to them, and shall not pass such tax on to persons to whom they lease or rent the motion pictures."

Subsequently, in 1969, the Legislature amended Article 20.01(J)(1)(c) to provide only that "Retailer" include:

"Every person who leases or rents to another tangible personal property for storage, use or other consumption." (Acts 1969, 61st Leg., 2nd C.S., Ch. 1, p. 61, 64).

All prior reference to rental of motion picture films was deleted by this amendatory Act, and exemption from the tax was provided for "motion picture theatres which are subject to admission taxes" by adding Article 20.04(Z):

"There are *exempted from the taxes imposed* by this Chapter the receipts from the leasing or licensing of motion picture films of any kind to or by *motion picture theatres which are subject to admission taxes* as imposed by Chapter 21, Title 122A, Revised Civil Statutes of Texas, 1925, as amended." (Acts 1969, 61st Leg., 2nd C.S., Ch. 1, p. 61, 79). (Emphasis added).

The following year, in 1970, American International Television, Inc., engaged in leasing to television stations motion picture films, brought suit for refund of taxes paid under protest challenging validity of the statute as discriminatory because of the exemption afforded motion picture theaters under Article 20.04(Z). The cause reached this Court for decision announced early in 1973. (*Calvert v. American International Television, Inc.,* 491 S.W.2d 455, no writ). This Court held that the classification by the Legislature and imposition of different burdens on theaters and television stations was not discriminatory and unequal since there existed a real difference which justified separate treatment. (491 S.W.2d 458-9).

Prior to decision on the issues raised in that lawsuit, the Legislature in 1971 amended Article 20.04(Z) to include "licensed television stations" in an unqualified exemption from the tax, but without changing the condition that motion picture theaters be exempt "which are subject to admission taxes." The article as revised is quoted:

"There are exempted from the taxes imposed by this Chapter the receipts from the leasing or licensing of motion picture films of any kind *to or by motion picture*

*theatres which are subject to admission taxes* as imposed by Chapter 21, Title 122A, Revised Civil Statutes of Texas, 1925, as amended, *and to or by licensed television stations.*" (Acts 1971, 62nd Leg., Ch. 1, p. 1). (Emphasis added).

In a suit brought by ABC Interstate Theatres, Inc., against the Comptroller and other state officers, a district court in Travis County in a judgment entered October 4, 1975, held unconstitutional the admission tax imposed on motion picture theaters under Article 21.02(2), as amended effective September 1, 1975. (Acts 1975, 64th Leg., Ch. 719, p. 2304, 2307–8). No appeal was perfected, and judgment of the district court became final.

Thereafter, effective October 27, 1975, the Comptroller issued a ruling directive of administration of the sales and use tax on rental or lease of motion picture films to or by theaters. The ruling provided:

"The admissions tax as applied to motion picture theaters has been declared unconstitutional; therefore, the Sales and Use Tax applies to the rental, lease and licensing of motion picture films of any kind to or by theaters, measured by the total amount charged for the use of the films. This provision is retroactive.

"The leasing or licensing of motion picture films of any kind to or by licensed television stations is exempt from the Sales and Use Tax."

This ruling of the Comptroller resulted in collection of the tax from motion picture theaters. The motion picture theater exhibitors in this lawsuit urge that the tax is discriminatory and therefore unconstitutional because the tax on film rentals is imposed on one industry but not upon another, both of which industries rent and use motion picture films. The same contention was made by American International Television in the cause before this Court in 1973. (491 S.W.2d 455, 458).

Since the commencement of the present litigation, and after the causes were submitted and orally argued before this Court, the Legislature amended Article 20.04(Z) to accord unqualified exemption to both "mo-

tion picture theatres" and "licensed television stations." The article, as it became effective June 10, 1977, now provides:

"There are exempted from the taxes imposed by this Chapter the receipts from the leasing or licensing of motion picture films of any kind to or by motion picture theatres and to or by licensed television stations." (Acts 1977, 65th Leg., Ch. 380, p. 1035).

Because the bill by which the amendment was effected passed both houses of the Legislature by "overwhelming vote," counsel for appellees suggest that passage by such vote ". . . evidences our position that the Sales Tax on film rentals was never intended by the Legislature in the first instance."

■■■ Nothing in the amendatory Act suggests that the last Legislature, by passing the bill with strong majorities, proposed thereby to evidence a want of prior intention not to tax film rentals. Legislative intent in the original enactment of a statute is not drawn from the size of the majority by which a subsequent Legislature amends or repeals the statute. What the Legislature intended originally is to be found in the language of the statute itself. *Simmons v. Arnim,* 110 Tex. 309, 220 S.W. 66 (1920); *McGuire v. City of Dallas,* 141 Tex. 170, 170 S.W.2d 722 (1943).

As enacted in 1971, Article 20.04(Z) "exempted from the taxes imposed . . . motion picture theatres *which are subject to admission taxes . . .*" and extended to "licensed television stations" an unqualified exemption. After October 4, 1975, when a court held that the admission tax on theaters was unconstitutional, no theater "was subject to admission taxes," and with the statutory qualification rendered void, all theaters of this state thereafter became subject to the tax on film rentals.

■ Article 20.04(Z), as added to the tax statutes in 1969 and as amended in 1971, plainly provided that motion picture theaters "subject to admission taxes" would be exempted from tax on film rentals, the clear meaning being that theaters which

are *not* subject to admission taxes would be required to pay the tax on film rentals.

After the district court in 1975 declared theaters no longer were required to pay admissions taxes, the condition for their exemption under Article 20.04(Z) from payment of the tax on film rentals was removed and their exemption became inoperative. Only licensed television stations remained exempt under terms of the statute. The motion picture exhibitors now contend, as already noted, that no reasonable difference between television stations and theaters exists, and theaters should not be required, for the tax periods involved in this suit, to pay film rental taxes, and that theaters having paid the tax under protest are entitled to refunds.

We have examined with care the decision of this Court in *Calvert v. American International Television, Inc., supra,* in which we found substantial and significant differences between television stations and motion picture theaters in deciding whether a reasonable basis existed for classification of the two industries in separate categories for tax purposes. The only changes we note since that decision in 1973 are that theaters no longer pay admissions taxes, and this time the theaters are claiming discrimination, whereas in the earlier case discrimination was claimed by the television industry.

In *Calvert v. American International* we pointed out, "The two occupations are not the same, even though both the theater and the television station show motion picture films, the former as its sole occupation, the latter incidental to its principal business of news medium and exhibitor of commercial and other kinds of advertising." (491 S.W.2d 459).

█ The rule is firmly established that the Legislature, in determining classifications for purposes of taxation, has broad powers, and courts will interfere only when there is a clear showing that there is no reasonable basis for an attempted classification. *Hurt v. Cooper,* 130 Tex. 433, 110 S.W.2d 896 (1937); *American Transfer and Storage Company v. Bullock,* 525 S.W.2d 918, 924 (Tex.Civ.App. Austin 1975, writ ref'd).

█ In determining whether a classification is constitutional, the test to be applied by the court is whether the classification made by the Legislature is essentially arbitrary, unreasonable, and not based upon reality. *Dallas Gas Co. v. State,* 261 S.W. 1063 (Tex.Civ.App. Austin 1924, writ ref'd); *American Transfer and Storage Company v. Bullock, supra.* The courts will not strike down the tax statute where there is a real difference to justify the separate treatment adopted by the Legislature. *Texas Co. v. Stephens,* 100 Tex. 628, 103 S.W. 481 (1907); *Dancetown, U. S. A., Inc. v. State,* 439 S.W.2d 333 (Tex.Sup.1969); *Calvert v. American International Television, Inc., supra.*

█ Contentions by appellees that the tax violates requirements of due process, or of equality and uniformity, guaranteed under the Constitutions of the United States and of Texas, are overruled as contrary to the principles relied on, discussed, and cited in *American Transfer and Storage Company v. Bullock,* 525 S.W.2d 918, 925–6.

Under its single point of error the State contends on appeal (1) that it is not unconstitutional for the Legislature to exempt television stations and not exempt theaters from the tax on motion picture film rentals; (2) that it is not unconstitutional for the exhibitor to be liable for payment of the tax and the distributor to be liable for collection of the tax; (3) that the sales tax is applicable to film rentals as a tax on rental of tangible personal property; (4) that the correct tax base is cost of rental to the lessee; and (5) that receipts from rental of motion picture films to theaters have not been totally exempted from sales tax.

We have sustained the State's first contention in holding that the classification arrived at by the Legislature will not be declared void in the absence of showing that the classification is essentially arbitrary, unreasonable, and not based upon reality.

The remaining contentions by the State are in reply to the position taken by appel-

lees on matters not controlling of the main issue of constitutionality. On the basis that such contentions by appellees may be regarded in the nature of counterpoints we should dispose of, we now consider them briefly and will overrule all such contentions.

■ The argument that it is fatal to validity of the tax statute for exhibitors to be liable for payment of the tax and distributors to be liable for its collection of the tax is without merit. Under the statute in 1961 distributors were prohibited from passing the tax to the exhibitors under provisions of Article 20.01(J)(1)(c). Film distributors were the only class of vendors or lessors required to absorb the tax. In 1969 this provision, which in 1961 placed the incidence of the tax on the distributor as lessor instead of the exhibitor as lessee, was deleted from the tax Act. With this change the tax was imposed on the lessee who occupies the place of the purchaser under Article 20.021 applicable to all vendors and lessors.

■ It is contended that the caption of the 1969 legislation was not sufficient, and in violation of Article 3, section 35, of the Constitution of Texas, because notice was not given of intent to transfer liability for payment of the tax or to increase the base for the tax. It is settled that the caption of an amendatory Act is not required by the Constitution to set out exactly what changes are made in the amending legislation if the subject of the Act is not remote from the subject of the original Act. *Smith v. Davis,* 426 S.W.2d 827, 833 (Tex. Sup.1968). See also *Majestic Industries, Inc. v. St. Clair,* 537 S.W.2d 297, 301 (Tex. Civ.App. Austin 1976, writ ref'd n. r. e.). The caption of an amendatory bill need not apprise the reader of the precise effects of the body of the proposed Act if the caption discloses the general subject. *Smith v. Davis, supra.*

Contention is made also that the rental price of films includes two separate charges, those being (1) the price to rent the tangible film and (2) a charge for the intangible right to exhibit the film. Appel-

lees argue that the sales tax should apply only to the price to rent the film as based on its replacement cost.

■ Under the Texas statute no attempt is made to tax an intangible. The Texas sales tax imposed on leases constitutes a transaction tax. *Young & Company v. Calvert,* 405 S.W.2d 174, 176 (Tex.Civ. App. Austin 1966, writ ref'd), cert. denied 386 U.S. 914, 87 S.Ct. 866, 17 L.Ed.2d 786. The motion picture film is the tangible property which is transferred by the distributor to the exhibitor with the right to use or exhibit the film for an agreed length of time. For the transaction to have value, the transaction necessarily consists of both the right to use and the actual transfer of tangible property, and the entire transaction is the subject of taxation.

We have carefully examined the contentions of appellees, and whether expressly described and disposed of or not, we overrule each and all of the contentions made which may be contrary to the disposition we make of the issues in this appeal.

We reverse the judgment of the trial court, which declared unconstitutional and inapplicable the sales and use tax as applied to the leasing and licensing of motion picture films to motion picture theaters in Texas. We hold that the tax as applied to such transaction is valid and not in contravention of the Constitution.

We render judgment that plaintiffs below in both causes take nothing by their suit.